Williams *vs.* Kelsey & Halsted.

No. 47.—SHEPHERD WILLIAMS, senr. plaintiff in error, *vs.* C. & $\frac{C}{110} \frac{365}{302}$
G. H. KELSEY & HALSTED, defendants in error.

[1.] Where money was paid to A by B, who said he paid it for C, and by his
directions: *Held,* that B was a competent witness to prove to whom the mo-
ney belonged, and by whose directions he paid it to A, and that his declara-
tions were not admissible in evidence, for that purpose, made at the time of
such payment in favor of his alleged principal. If such declarations could
be admitted as part of the *res gestæ,* his general or special agency to make
the payment must first be shown.

[2.] That a witness may refer to a written instrument, memorandum, or to an
entry in his books, to refresh or assist his memory, is a well established rule
of evidence; and although the witness has no recollection of the fact, inde-
pendent of the entry in his books, but will testify as to his uniform practice
to make his entries truly, and at the time of each transaction, and will far-
ther state, that from such practice, he has *no doubt* the entry in question is
correct, his testimony is admissible.

[3.] But where a witness states, that certain facts *seem to have transpired be-
tween the parties from his docket,* without adding the legal sanction of the oath
of the witness to the truth thereof, from his recollection or otherwise: *Held,*
not to be admissible.

[4.] The Cashier of the Central Bank is not a competent witness to prove the
contents of the books of the Bank, under its charter, not within his own
knowledge, except in those cases in which the Bank is a *party.*

[5.] Where a witness is examined by commission, the party cross examining
may withdraw his cross questions if he chooses—the other party having the
liberty to read them at his option.

[6.] In claim cases, arising under the peculiar provisions of our Statutes, the
defendant in execution is not a competent witness for the claimant, nor can
the declarations of the defendant in execution be received in evidence in
favor of the claimant.

[7.] Where a creditor, who is the mortgagee, forecloses his mortgage, and
purchases the mortgaged property at Sheriff's sale under it, and suffers the
property so purchased to remain in the possession of the mortgagor after the
sale, such retention of possession, by the mortgagor, is a badge of fraud as
against other judgment creditors.

[8.] Where property is levied on by a judgment creditor, and claimed by a
purchaser under a sale made in pursuance of the judgment of foreclosure
of a mortgage under our Statute: *Held,* that such judgment of foreclosure was
*prima facie* evidence of indebtedness by the mortgagor to the mortgagee,
and that the burden of showing a want of consideration to support the
mortgage, rests upon the plaintiff in execution, and not the claimant.

[9.] Whether the consideration for which a mortgage is alleged to have been
executed, is *bona fide,* or merely colorable to defraud creditors, or so inade-
quate as to constitute a badge of fraud, is a question of fact which should

be left to the Jury, upon the whole evidence in the case, without any restriction on the part of the Court, as to the necessity of proving *all the items of indebtedness*, alleged to have been the consideration of such mortgage, by the claimant.

Levy and claim, in Houston Superior Court. Tried before Judge FLOYD, October Term, 1848.

On the 25th day of March, 1839, Shepherd Williams, senior, executed to Thomas Williams, an instrument obligating himself to pay certain debts therein specified, for Thomas Williams among which was a debt due the Central Bank. The several items of indebtedness specified in the instrument, were consolidated, and a note for $5124 48, was given by Thomas Williams to Shepherd Williams, sen. At the same time, for the securing the payment of the note, Thomas Williams executed to Shepherd Williams, sen. a deed of mortgage, for certain property therein specified, among which were three slaves, Tom, Sally and Harriet. The mortgage was afterwards foreclosed, and the slaves, Tom and Sally, were sold under a *fi. fa.* issued thereon, by the Sheriff of Houston County, on the 2d day of June, 1840, and Harriet on the 5th day of January, 1841, and purchased by Shepherd Williams, sen. through his agent, Washington Williams.

On the 21st day of August, 1846, an execution issued from the Superior Court of Houston County, in favor of the defendants in error, against T. & S. Williams, jr.—was levied on the slaves, Tom, Sally and Harriet, as the property of Thomas Williams, which were claimed by Shepherd Williams, sen. plaintiff in error.

At October Term, 1848, of Houston Superior Court, the cause stood for trial on the appeal.

The plaintiffs in execution offered in evidence their *fi. fa.* and proved that the slaves were in the possession of Thomas Williams at the date of the levy, and had remained in his possession since the sale under the mortgage *fi. fa.* and closed.

The claimant introduced in evidence, the mortgage and the *fi. fa.* issued on foreclosure thereof, and the bill of sale to the negroes, from the Sheriff of Houston County, to Shepherd Williams, sen.; also the agreement or receipt from Shepherd Williams to Thomas Williams, specifying the debts for which the note, the foundation of the mortgage, was given.

The claimant then offered in evidence the testimony of R. M.

Williams *vs.* Kelsey & Halsted.

Charlton, taken by commission, to prove that a judgment had been obtained by him, as attorney for the Central Bank, against Shepherd Williams and others, on the note specified in the agreement between Shepherd and Thomas Williams; also, to prove the payment of $400 thereon, by the son of claimant, who stated, at the time, that the money paid belonged to his father; which testimony was objected to by the plaintiffs, on the ground that the statements of witness in relation to the note, were not of his personal knowledge, but only as *appeared* from the docket kept by the late firm of Charlton and Ward, attorneys at law; and that the sayings of the claimant's son, at the time of the payment of the $400, were inadmissible. The objection was sustained, and the claimant excepted.

The claimant then offered in evidence, the testimony of A. M. Nisbet, taken by commission, to prove the discount and renewals of a note made by claimant, for the benefit of Thomas Williams, to the Central Bank. Plaintiffs objected to that portion of the testimony derived from the books and records of the Bank; which objection was sustained by the Court, and the claimant excepted.

After the claimant had submitted that portion of the testimony of A. M. Nisbet, not excluded, in answer to the direct interrogatories, and also the testimony of another witness, taken by commission, in answer to the direct interrogatories, the plaintiffs withdrew the cross interrogatories and answers, to which claimant objected. The Court overruled the objection and the claimant excepted.

The claimant offered to introduce Thomas Williams, the defendant in execution, to prove his indebtedness to the claimant at the time the mortgage was given, &c. The plaintiffs objected. The Court sustained the objection and the claimant excepted.

The claimant then offered to prove the sayings of Thomas Williams, in relation to the ownership of the slaves, since the sale under the mortgage *fi. fa.* The plaintiffs objected, and the Court sustained the objection, and the claimant excepted. The claimant closed, when

Plaintiffs introduced a witness, to prove that he (witness) rented from Thomas Williams a lot of land, specified in the mortgage, for the year 1847, and that witness paid him therefor. Claimant objected to the testimony. The objection was overruled by the Court and the claimant excepted.

The witness was then asked by claimant, if, in the negotiations previous to the final contract between himself and Thomas Williams in relation to the rent of the land, Williams did not state that he was acting as agent. Plaintiffs objected to the question. The Court sustained the objection and claimant excepted.

The Court charged the Jury, that if they believed, from the testimony, that Thomas Williams was really and in good faith indebted to Shepherd Williams, sen. he had a right to secure him by mortgage, provided the mortgage was not executed fraudulently, and for the purpose of delaying creditors, but that they must believe, from the testimony, that S. Williams had paid off and discharged the items of indebtedness, specified in the agreement produced in evidence, and if claimant had not shown the payment of said items, he had not shown such an indebtedness as would remove the presumption of fraud; that the retention of possession, after an absolute sale, was a badge of fraud, and, unexplained, sufficient of itself to justify the Jury in condemning the property; that the fact that the sale was by the Sheriff, under execution, did not alter the rule; that the possession of the former owner, after the Sheriff's sale, was still a badge of fraud; that if the purchase had been made by one not a creditor, and who advanced the money on the purchase, that would have been a circumstance which would have gone far to remove the presumption of fraud; but that here it was a creditor who purchased, and the fact that such purchase was made at Sheriff's sale, under execution, was not a circumstance to remove the presumption of fraud, created by the possession remaining in the former owner of the property, the defendant in execution; that there was no distinction in this State, between a Sheriff's sale, under execution, and a private sale by the owner of property, so as to remove the presumption of fraud, arising from retention of possession.

To which said opinions and charges of the Court, the claimant excepted, and upon the said several exceptions, assigned errors.

J. B. HINES and C. B. STRONG, for plaintiff in error.

1st. The Court erred in ruling out that part of the testimony of Robert M. Charlton and John E. Ward, relating to sayings of the son of Shepherd Williams, made at the time of the transaction to which those sayings referred. 2 *Starkie on Ev.* 61, *top*

Williams *vs.* Kelsey & Halsted.

*page.* 2 *Pet.* 363. 6 *Cowen*, 99. 12 *Wheat.* 468. 3 *Brod.* &
*Bing.* 5 *Esp.* 74. 1 *Greenlf.* 137.

2d. The Court erred in ruling out testimony of Robert M-
Charlton and John E. Ward, in so far as relates to books kept by
the firm of Charlton & Ward.

3d. The Court erred in ruling out testimony of A. M. Nisbet,
so far as it relates to books kept by the Central Bank. *Prince's
Dig.* 77.

4th. The Court erred in allowing the defendants to with-
draw cross questions and answers, addressed by them to various
witnesses, after the plaintiff in error had finished presenting the di-
rect answers.

5th. The Court erred in excluding the testimony of Thomas
Williams, the defendant in *fi. fa.* 1 *Richardson*, 242.

6th. The Court erred in requiring the plaintiff in error to
prove the payment of the notes by Shepherd Williams, plaintiff
in error, which were part of the consideration of the note made
by Thomas Williams to Shepherd, and on which the mortgage
was grounded. *Philp. Ev.* 3, 1228, *note* 961. 7 *John.* 304. 14
*Ib.* 310. *Prince's Dig.* 424. 7 *Cowen*, 360. 2 *John.* 177.

7th. The Court erred in excluding testimony of the sayings of
the defendant in *fi. fa.* explaining the situation of the property
and the nature of his possession. 2 *Term*, 53. 1 *Johns.* 340. 1
*Esp.* 458. 2 *Green.* 125.

8th. The Court erred in admitting testimony of Saunders, to
prove that Williams had rented the lot of land to him, and receiv-
ed the rent therefor, which was included in the mortgage of per-
sonal property.

9th. The Court erred in ruling out the cross questions offered
to be put to Saunders by counsel for plaintiff in error.

10th. The Court erred in ruling that in Georgia, the possession
of the property being left in defendant after sale by a *fi. fa.* was
badge of fraud. 4 *Barn.* & *Cres.* 433. 8 *Taunt.* 841. 2 *Bos.* &
*Pull.* 59. 1 *Ld. Raym.* 724. 1 *S. L. Cases* 1. 5 *Rand.* 211. 2
*Term R.* 587. 6 *Rand.* 285.

S. D. KILLEN, for defendants.

The Circuit Judge properly excluded that portion of the tes-
timony of Robert M. Charlton and J. E. Ward, referred to in the
1st and 2d assignment.

It is a well settled rule of law, that the best attainable evidence shall be adduced to prove every disputed fact.  1 *Starkie*, 500.. 1 *Greenlf. Ev.* 82.

Was this the best evidence of which the case was susceptible? 1 *Greenlf. Ev.* 436, '7, '8.  1 *Starkie*, 35 *to* 40.

3d.  The same doctrine will apply, with equal if not more force, to the testimony of Nisbet, the Cashier of the Central Bank, referred to in the 3d assignment, and supported by 1 *Greenlf. Ev.* 484.  *Prince*, 220.

4th.  The privilege of withdrawing cross interrogatories is supported by the practice of the Courts, from time immemorial.

5th.  The issue below was, fraud or no fraud, between the defendant in *fi. fa.* and the claimant, and the presumptions are in the affirmative.  *Peck vs. Land*, 2 *Kelly*, 1, &c.

6th.  The sayings of the defendant in *fi. fa.* will be excluded after the rising of the *lis mota*, as in this issue.  1 *Greenlf. Ev.* 131, '2, '3.

7th.  The acts of a party in possession, permitted by the claimant, are competent to charge him.

8th.  There was no error in the charge of the Court, as alleged in 8th assignment.  17 *John.* 332.  12 *Wend.* 41.  15 *Ib.* 628.. *Amer. Notes, Tarver's Case*, 1 *Sm. L. Cases*, 47 *and* 50.  2 *Kelly*, 1.

10th.  There was no error in the charge of the Court, as alleged in the 10th assignment.

S. T. BAILEY, for defendants in error.

The entry in the books of an incorporated Bank is not admissible evidence to show a deposit of money, in a suit to which the Bank is not a party, unless it be proved that the clerk who made the entry is dead or beyond seas.  *Phil. Bank vs. Officer et al.* 12 *S. & R.* 49.  *Ib.* 256.  " This may be a hard case, but hard cases make bad precedents."  *Ib.* 53.

Examined copies of *public books* are evidence.  1 *Phil. Ev.* 424.

But such copies are not evidence in case of private bank books.. 12 *Serg. & Rawl.* 256.

A witness may refresh his memory by any book or paper, if he can afterward swear to the fact from recollection, but if he can

only swear from finding it in the book or paper, they are not evidence.   3 *Phil. Ev.* 551.   5 *Serg. & Rawl.* 87.   12 *Ib.* 87.   18 *J. R.* 451.   11 *Wend. R.* 477.

Books kept by private individuals are never evidence, unless to charge one to whom goods are sold.   12 *Serg. & Rawl.* 86.   5 *Ib.* 404.   1 *Binn.* 234.   15 *Mass. R.* 381.   8 *Wheat. R.* 326.

Entries made by one in the course of his duty, *at the time of a transaction,* are evidence after his death, but never while he is living and within the jurisdiction.   16 *Serg. & Rawl.* 90.   15 *Mass. R.* 381.   8 *Wheat. R.* 326.   3 *Pick.* 96.   13 *Ib.* 465.   18 *Ib.* 558.   20 *Ib.* 339.

It is illegal to admit declarations of a party in his own favor, even when the Court charges the Jury that it is not evidence.   13 *J. R.* 348.

It is essential to *entries* that are admissible as part of the *res gestæ,* that they should be made and so proved, contemporaneously with the accompanying acts.   1 *Greenlf. Ev.* §120.   *Doe, &c. Pattershall vs. Turford,* 23 *Com. L. R.* 214.

Declarations of common reputation must be before any controversy has arisen, and by that is meant that state of facts on which the claim is founded.   1 *Greenlf. Ev.* §131.

In questions of fraud, the declarations of a party in his own favor are inadmissible.   *Carter vs. Gregory,* 8 *Pick.* 168.

What was said at one time cannot be explained by declarations at another time, as evidence.   *Peter's C. C.* 15.   2 *Bailey's R.* 464.

By the Common Law, possession of goods by an insolvent after absolute sale, was, *per se,* a fraud, and to be so declared by the Court; and the Sheriff's sale was in the same predicament, if the purchaser were the plaintiff in the execution, and no money paid; but it was otherwise in case of a stranger who pays his money; possession then becomes a badge of fraud, to be judged of by the Jury as to its *bona fides.*   2 *Kent's Com.* 518 *to* 536.   *Kidd vs. Rawlinson,* 2 *Bos. & Pul.* 59.   10 *Vesey,* 145.   4 *Taunt.* 823.   8 *Ib.* 338.   4 *Barn. & Cres.* 652.   10 *C. L. R.* 432.

The rule of Common Law is to prevent false credit.   2 *Kent,* 523.   5 *Taunt.* 212.   1 *Com. L. R.* 85, '6.

Declarations of a debtor, when in possession of property, may be given against his vendee, and in his absence to show fraud.   3

*Phil. Ev.* 178, 602 *note.* 10 *Serg. & Rawl.* 423.   4 *S. & R.* 233.
6 *Rand.* 285.   1 *Rawle*, 362, 458.

Declarations of one claiming to hold under another, are not evidence, they being in his favor.   1 *J. R.* 340.

Declarations of a supposed grantee, who may be considered interested at the time, to declare in the particular manner testified to, not evidence for any purpose.   4 *Mass. R.* 702.

Possession after an absolute sale is, *per se*, fraud, unexplained.
10 *Serg. & Rawl.* 428.   2 *Kelly*, 13.

Any *one* of the badges of fraud will defeat the conveyance.
*Peck vs. Land*, 2 *Kelly*, 15.

If the creditor become the purchaser at Sheriff's sale, and let the defendant retain the possession, and he insolvent, the same rules apply as in case of voluntary sale.   2 *Bos. & Pul.* 59.   9 *J. R.* 243, 341.   16 *Wend.* 526.

Admissions and declarations of an agent or attorney are admissible as part of the *res gestæ*, first *proving the agency.*   3 *Phil. Ev.* 604.   24 *Eng. Com. L. R.* 70.

And where the declarant is incompetent.   11 *Eng. Com. L. R.* 412.

Where it is proven that one is the agent of another, his acts and declarations are evidence against his principal, and part of the *res gestæ*, when about his duty.   2 *Starkie's Ev.* 34.   4 *Taunt. R.* 519, 565.   6 *Cowen*, 90.   2 *Peters' R.* 358.

Before faith is to be given to acts or entries by private agents, the agency must be proved.   1 *Greenlf. Ev.* §154.   2 *Jac. & Walk.* 464, 468.

If a verdict in a cause for the plaintiff will deprive a witness of the enjoyment of an interest in possession, he is incompetent.   1 *Stark. Ev.* 105.   *Cowper*, 621.

Although a vendee charged with fraud release his vendor, he is not a competent witness, being *particeps fraudis*—the one could not sue the other in case of failure, so there was nothing to release.   *Rea vs. Smith*, 19 *Wend.* 203.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first exception taken to the decision of the Court below is, the rejection of the testimony of Robert M. Charlton, which consisted of the statements made by the son of the claim-

ant, to witness, when he paid him $400, as the attorney of the Central Bank, as to the purpose for which he paid the money, for whom, and by whose directions he paid it. The declarations of the son are sought to be made evidence, on the ground that he was the *agent* of his father, in making the payment of the money. There are two fatal objections to the admissibility of this testimony of the son. First, it is not shown that the son was either the *general* agent of his father, to transact his business, or that he was constituted his agent for that *particular transaction*, except so far only as his agency may be inferred from his *own act*, by the payment of the money to the witness. Second, because the admission or declaration of the agent, when acting within the scope of his authority, is to be considered as the admission or declaration of his principal. 2 *Starkie's Ev.* 60. *Story on Agency*, §135. This admission or declaration of the agent, that the money paid by him to the witness, was his father's money, and paid by his directions, is offered in behalf of the *claimant*, who is the alleged principal. The admissions of the principal, in his *own favor*, would not be competent, nor are the admissions or declarations of his agent competent in favor of his principal, any more than the principal's own declarations and admissions would be. The fact of agency might have been proved by the agent himself, and he would have been a competent witness to prove whose money it was he paid to the attorney of the Central Bank. If any fact material to the interest of either party, rests in the knowledge of an agent, it is to be proved by his *testimony*, not by his *mere assertion. Fairlie vs. Hastings*, 10 *Vesey*, 127. The declarations of the alleged agent in this case, cannot be received as a part of the *res gestæ*, for the obvious reason that neither his general nor special agency has been established.

The second exception to the decision of the Court below is, the sustaining the objection taken by the plaintiff in execution, to that portion of the answers of Messrs. Charlton & Ward, offered by the claimant, which refers to the memoranda and entries made by them on their books, and their statement made to the Central Bank, as appears therefrom.

[2.] That a witness may refer to a written instrument, memorandum or entry in his books, to refresh or assist his memory, is a well established rule of evidence; and even where the witness has no recollection of the fact, independent of the entry in his

books, but will testify as to his uniform practice to make his entries truly, and at the time of each transaction, and will farther state he has *no doubt*, from such practice, that the entry in question is correct, his testimony is admissible; for then the witness speaks upon his own responsibility, under the legal sanction of his oath, his memory being refreshed by the entry in his book or memorandum, the same having been made in accordance with his known habit and practice. 1 *Greenlf. Ev.* §§436, 115. *Merrill vs. The Ithaca and Oswego Rail Road*, 16 *Wendell's Rep.* 5 *and* 6. *Bank of Monroe vs. Culver*, 2 *Hill's N. Y. Rep.* 531. While we recognize the rule above stated, the evidence offered does not come within it, in our judgment, and was properly rejected by the Court below.

[3.] The witnesses state, as attorneys of the Central Bank, that certain things were done, and transactions had, which are given in detail, " which *seem, from the docket kept by said firm, and the written statements made by said firm to the Central Bank.*" The objection is, that the witnesses do not say they kept a docket and were in the practice of making entries therein, at the time of the transactions to which they are called to testify, and that they have no doubt, from their usual course of doing business, the entries were truly made and are correct; but the *docket* is made to speak as to the transactions, without receiving that *legal sanction* of the witnesses which the rule requires. It is not sufficient that the facts appear on *the docket* of the witnesses; their legal sanction must be had, that they have *no doubt*, from their usual manner of doing business, the entries were made at the time they appear to have been made, and are correct and true.

[4.] The third exception taken, as appears from the record, was the rejection of that portion of the testimony of A. M. Nisbet, Cashier of the Central Bank, which went to prove the *contents* of the books of the Bank, of which contents the witness had no *personal* knowledge. This evidence is sought to be admitted under the 9th section of the amendatory Act of the charter of the Central Bank, which provides for the examination of the officers of the Bank, by commission, as to the contents of the books, whenever the Bank shall be *a party*. *Prince*, 76. In this case, the Bank is not a party to the suit, and the Act relied on only extends to such cases as to which the Bank may be a *party*, and be-

ing a Statute enacted in derogation of the Common Law rules of evidence, must be construed *strictly.* By the 17th section of the original charter of the Central Bank, all the transactions, operations and accounts of the Bank are required to be kept in books to be provided for that purpose. *Prince,* 74.

The Central Bank is a public institution, and the officers thereof are public officers. By the Act of 1830, the certificate of any public officer, under his hand and seal of office, either of this State or any County thereof, in relation to any matter or thing pertaining to their respective offices, or which, by presumption of law, properly pertains thereunto, shall be admitted as evidence, before any Court of Law or Equity in this State. *Prince,* 220. The officer examined, not having any *personal* knowledge of the facts about which he was interrogated, as to the contents of the books of the Bank, a certified copy from the books, under the hand and seal of the officer, would, in our judgment, have been competent, and the best evidence to prove the transactions of the Bank with its debtors, so far as the same is confined to the books of the Bank. The evidence offered was properly rejected by the Court below.

[5.] The fourth exception contained in the record, is to the decision of the Court in permitting the counsel for the plaintiff to withdraw their cross questions to the claimant's interrogatories, with permission to the claimant to read them if he desired to do so.

When one party introduces a witness and examines him, the other party is entitled to cross examine such witness, if he desires to do so, but he is not *compelled* to cross examine him; nor do we hold he is *compelled* to read the cross questions and answers of the witness, examined by commission; but, having put the cross questions to the witness, the other party is entitled to read them and the answers thereto, and so we understand the Court below to have ruled. Whether the witness be cross examined or not, he is the witness of the party introducing him. We find no error in the record so far as this exception is concerned.

[6.] The fifth exception taken to the decision of the Court below is, the rejection of the defendant in execution, who was offered as a witness on the part of the claimant.

This question arises under the peculiar enactments of our claim laws, and if it was a new question in our Courts, it might be somewhat difficult to assign any technical legal reason for rejecting the

witness; but, impressed as we are with the importance of maintaining and preserving the rules of evidence with respect to the titles of property in this State, as the same have *heretofore existed,* we do not feel it would be either safe or expedient to interfere with the rule of decision which, so far as we know, has generally prevailed in our Courts, ever since the enactment of our claim laws. In legal theory, it would seem that it would be for the interest of the defendant in execution to have the property found subject to the execution, and applied to the payment of his debts, and consequently that when called as a witness for the claimant, he would be called to swear against his interest. But twenty odd years' observation and experience in our Courts, has satisfied us that this legal theory will not hold good in practice, for we hesitate not to declare, that in nineteen out of twenty of the claim cases which arise in our Courts, the feeling, sympathy and interest of the defendant in execution is with the *claimant.* This fact is indelibly stamped on the face of the record now before us. How exceedingly rare is it to find the defendant in execution colluding with the plaintiff in *fi. fa.* which has been levied on his property? How often do you find him colluding with the claimant to screen his property from the payment of his just debts? The sale of the property by the defendant to the claimant is generally made after his pecuniary circumstances have become desperate. The claimant derives his title to the property from the defendant in execution, who feels interested to support and sustain it against one whom he supposes to be an unfeeling creditor, pressing the collection of his debt. The answer may be, that the *legal theory* of this view of the question is, that the interest of defendant is equally balanced between the creditor and the claimant, and, therefore, he is a competent witness. But our Courts have held, and we think rightfully held, that the defendant in execution has, in the *practical* application of the principle, a *preponderance* of interest in favor of the claimant. Whatever may be considered as the *legal theory* of the rule which excludes the defendant in execution from being a witness in favor of the claimant, we are satisfied that, in a *practical* point of view, the rule which has been heretofore so generally adopted by our Courts, is the *safest* and *best* rule; and believing it to be so, we feel no inclination to disturb it. It is not a matter of so much importance what the rule of evidence upon this subject shall be, so that the rule is uni-

Williams *vs.* Kelsey & Halsted.

form, and uniformly administered, and in establishing the rule, we think that both wisdom and sound policy dictate to us, not to *innovate* upon a rule of evidence which has so long been observed by most of our judicial tribunals, and impliedly, at least, received the sanction of the people upon whom it has operated. In *Edwards vs. Musgrove,* this question was submitted to the Judges of the Superior Courts, when sitting in Convention, and it was there held, that the defendant in execution was not a competent witness for the claimant. *Dudley's Rep.* 219. That decision has been published for several years, and no attempt has been made by the Legislature to alter the rule of evidence upon this subject; hence we conclude, that the operation of this rule of evidence, as established by the Judges in Convention, and generally followed in our Courts, has been considered a safe and satisfactory rule of evidence in this State, on the trial of claim cases originating under our claim laws. We therefore affirm the judgment of the Court below as to this branch of the case.

The sixth exception taken to the decision of the Court is, to the rejection of the declarations of Thomas Williams, the defendant in execution, in favor of the claimant, while in possession of the property. The same reasons which we have assigned for the rejection of the defendant in execution, as a witness in favor of the claimant, apply with equal force to the rejection of his declarations in his favor. This defendant, as is the case with almost every defendant in execution in a claim case, manifests a wonderful alacrity to make evidence for the benefit of the claimant's side of the question; but as we hold him inadmissible as a witness in behalf of the claimant, the same rule of policy will, also, exclude his admissions in his favor.

The seventh exception is, to the overruling the claimant's objection to the testimony of Warren E. Sanders, who was offered by the plaintiff, to prove that Thomas Williams, the defendant in execution, had rented to him, for the year 1847, the lot of land specified in the mortgage, together with the negroes levied on, and had paid him the rent therefor. There is no evidence furnished by the record before us, that the land included in the mortgage had ever been sold under the judgment of foreclosure, and until such sale the defendant's title to the land was not divested, and he had the right to rent it and receive the rent therefor; and such acts, on his part, would not be evidence of fraud as against the

plaintiff in execution, and we are of the opinion that the Court erred in admitting this testimony, under the state of facts as presented by this record. We are also of the opinion, that the Court erred in its judgment, in not permitting the witness, Sanders, to be cross examined as to what the defendant in execution said, in regard to his being the *agent* of the claimant, when making the negotiations for the rent of the land.

, The witness stated, that when the trade for renting the land was finally closed, Williams did not say any thing about his being the *agent* for any one in renting the lot, but that they had several conversations previously about renting the land, and in negotiations for rent. Claimant then asked the witness if, in the previous negotiations about the rent, Williams did not state to him he was acting as *agent* for another. This evidence might have explained and rebutted the presumption, sought to be inferred from the evidence, that he rented the land as his own property. The negotiations for the rent, and the contract of renting, all appertained to the same transaction, and ought to have been received as explanatory of it.

The eighth exception is, to that part of the charge of the Court to the Jury, which relates to the possession of the defendant in execution, of the property, after the foreclosure of the mortgage and the sale of the property by the Sheriff.

[7.] The Court charged the Jury, that the retention of possession of the property by the defendant in execution, after an absolute sale by the Sheriff, was a badge of fraud, especially when the property was purchased by the mortgage creditor. We concur in opinion with the Court below, that the retention of the possession of the property, by the defendant in the mortgage *fi. fa.* after an absolute sale by the Sheriff, was a *badge* of fraud, which it was incumbent on the claimant to remove by a satisfactory explanation of that possession. The purchaser at the sale was the mortgage creditor, who is now the claimant, and the relation of father and son existed between the mortgage creditor and the defendant in execution. *Kidd vs. Rawlinson, 2 Bos. & Pullen,* 59. *McInstry vs. Tanner, 9 John. Rep.* 135. *Farrington & Smith vs. Caswell,* 15 *John. Rep.* 430. *Dickinson vs. Cook,* 17 *John. Rep.* 332. *Stevens, adm. vs. Barrett, adm.* 7 *Dana's Rep.* 259.

The ninth and last exception to the decision of the Court below, is to that portion of the charge of the Court to the Jury,

" that they must believe, from the testimony, that the claimant had paid off and discharged the items of indebtedness specified in the agreement produced in evidence, and if the *claimant* had not shown the payment of said items, he had not shown such an in-debtedness as would remove the presumption of fraud." The items in the agreement were the consideration of the note, which the mortgage was given to secure. The objection is, that the Court ruled that it was incumbent on the claimant to prove the consideration for which the mortgage was given, when the law devolves that proof upon the plaintiff in execution, especial-ly after the judgment of foreclosure of the mortgage, and that it was not indispensably necessary that all the items in the agree-ment should have been proved, to sustain the consideration of the mortgage. With regard to this last exception, our judgment is with the plaintiff in error.

[8.] After the judgment of foreclosure of a mortgage under our Statute, such judgment of foreclosure affords *prima facie* evidence of indebtedness, and the burden of showing a want of consideration, rests upon the party alleging it. In this case, the burden of proof rested on the plaintiff in execution, and not upon the claimant.

The instruction of the Court is, that the Jury must believe that the *claimant* had shown payment of the items in the agreement, which was the consideration of the mortgage, and that if the *claimant had not shown such payment,* the presumption of fraud was not removed.

Nor do we hold, even had the burden of proof rested on the claimant, that it was absolutely necessary all the items of indebt-ness in the agreement should have been proved. The effort is to impeach the mortgage under which the claimant derives his title to the property, on the ground that it is fraudulent as against cred-itors; and the want of sufficient consideration to support the mort-gage, is alleged as a badge of fraud against it.

Fraud may be inferred from circumstances, such as the *small-ness* of the consideration expressed, compared with the fair price of the property conveyed, or the want of proof of any price hav-ing been actually paid. *Hildreth vs. Sands et al.* 2 *John. Ch. Rep.* 35.

[9.] Whether the indebtedness of the defendant in execution to the claimant, was a *bona fide* indebtedness, or what was the ac-

tual amount of his indebtedness, to secure which the mortgage was given, or whether the mortgage was merely *colorable,* and without consideration, were questions of fact which the Court ought to have submitted to the Jury, irrespective of the proof of all the *specified items* in the agreement. If all the items of indebtness were not proved, was there a sufficient consideration shown to rebut the presumption of fraud in the execution of the mortgage? Does the consideration for which the mortgage is alleged to have been given, afford satisfactory evidence of the *bona fides* of the transaction, or was it merely colorable for the purpose of defrauding the creditors of the mortgagor? Under the charge of the Court, had the Jury believed that any one of the items of indebtedness, specified in the agreement, had not been proved to have been paid by the claimant, they would have been at liberty to find that the allegation of fraud had not been removed, although it had been shown that most of the other items were paid by him. We think that the charge of the Court was calculated to mislead the Jury in respect to the consideration for which the mortgage was executed, and which was alleged as a *badge of fraud against* the claimant, consequently a new trial must be granted.

Let the judgment of the Court below be reversed.