CHATTANOOGA, R. & C. RAILROAD Co. *v.* DAVIS.

1. A chartered railroad company may contract jointly with individuals in settlement of litigation to which it is a party, and bind itself jointly with them to construct, keep up and perpetually maintain stock-gaps and road-crossings across the track of the company upon the premises involved in the litigation.

2. A declaration alleging such joint contract and a breach thereof, is, after all the defendants except the railroad company have been stricken, to be read as if it alleged a several contract by the company alone, and may then be amended by averring that the agreement was embraced in a deed of conveyance made by the plaintiff to the company, by which the right of way through the premises was conveyed, and under which the company built its railroad through the premises, and has since maintained and operated the same.

3. Whether a chartered railroad company procures its right of way directly by its own contracts, or indirectly through the intervention of a construction company employed by it, it is bound to perform all the conditions and undertakings inserted in deeds made to it conveying the right of way, provided it operates and uses its railroad on and over the premises to which such conveyances apply; and a delivery of a deed to the construction company is delivery to the railroad company, if the latter company has taken and enjoyed the benefit of such deed by appropriating and using the right of way which the deed in express terms conveys directly to the railroad company.

4. When a railroad company has taken the benefit of a deed made to it, the sayings of the person who procured the deed in its behalf, made at the time the deed was executed, to the effect that he was acting as agent for the company, are admissible in evidence as a part of the *res gestæ.*

5. The evidence warranted the verdict, and there was no error in denying a new trial.                    *Judgment affirmed.*

August 1, 1892.

Railroads. Contracts. Parties. Amendment. Evidence. Before Judge Maddox. Walker superior court. August term, 1891.

Action by Davis against the railroad company, Wardlaw and others, for damages from a breach of a contract for keeping up stock-gaps, etc. When the case was called the plaintiff dismissed the suit as to all the defendants except the railroad company, and offered an amendment which the court allowed over objection that it made a new and distinct cause of action and was illegal. The declaration as amended was demurred to, and the demurrer overruled. There was a verdict for the plaintiff for $375, and defendant's motion for a new trial was overruled. To these three rulings the defendant excepted.

The declaration alleged that the railroad company and Wardlaw and others had damaged petitioner $500; that in 1888, he filed his suit by bill against the railroad company to enjoin it from operating its road over his land, describing it, and to recover from it damages sus-

tained by him because of it having unlawfully entered upon the land and constructed its road-bed and track through the land without his consent; that after the suit was filed the railroad company, together with the other defendants, contracted and agreed with him, in order to settle said suit, to pay him as damages for the right of way $———, the costs of suit and his attorneys' fees, and as a further consideration for the settlement of the suit at the price he agreed to and did take as his damages, defendants contracted and agreed with him, and as an inducement for the compromise, to construct, keep up and properly maintain stock-gaps, free of cost to him, at such points as the same might be required on the land, and to keep and maintain road-crossings across the track of the railroad in the fields of the petitioner on said land; that in addition to the amount of money paid him, the stock-gaps and road-crossings were also to be constructed and kept up by the defendants and as a part consideration for the settlement, and without this agreement on the part of defendants he would not have settled the case upon the terms it was settled; that defendants failed to comply with their said agreement, although they agreed at the time to do so and had frequently since promised him to do so, and relying on them and believing they would comply with their agreement, he kept his open land on the lot in cultivation during the years 1888 and 1889, and raised thereon large crops of corn and wheat, but in each of these years defendants failed to build and keep the stock gaps at the point where the railroad enters the land, and because of their failure to comply with their agreement his crop was destroyed and greatly damaged by stock; and that defendants have failed to build crossings as they contracted to do, wherefore he has been injured and damaged by such failure, etc. The amendment was, that said agreement and understanding as to the building of

necessary stock-gaps, and constructing and maintaining necessary crossings, was embraced in a deed of conveyance made by petitioner to said defendant (the railroad company) conveying to it the right of way through the land, which deed by its agents and attorneys it accepted, and under which it built the road and has since maintained and operated it through the land.

The demurrer was on the grounds, that no cause of action was set forth against the defendant; that the suit was based upon the breach of a joint or partnership contract, and the railroad company had no right to make such contract, and the same was *ultra vires*, null and void; and that the plaintiff, having dismissed the suit as to the other joint obligors and released them, had thereby increased the risk and liability of the railroad company, and the effect of such dismissal was to release it, and no case was left upon which there could be a recovery.

The motion for a new trial contains grounds that the verdict was contrary to law, evidence, etc., that it was excessive, and that the court erred in refusing to grant a nonsuit, because plaintiff failed to make out his case as alleged in the declaration, and failed to make out any case that would entitle him to recover against defendant, and because the proof failed to show any joint contract as alleged, and failed to connect defendant with the transaction in any way, except that a deed was made by plaintiff to defendant with no name of other parties in it, and certain conditions in the deed to be performed by defendant, and the same was not delivered to defendant. Counsel for defendant also stated in their place, in response to a notice to produce the deed, that it was never delivered to defendant.

The only other ground for new trial was, that the court erred in permitting plaintiff to testify, over defendant's objection that an agency could not be proved

by the saying of the agent, that Copeland claimed, at the time of delivery of the deed, to be agent of the railroad company, and told him he had authority to act for the individuals whose names were signed to the contract. Upon the question made in this ground, the plaintiff testified: I executed a deed to the right of way through the lot. It was before the railroad was put through. They had the road graded about through, but there was no track and the road was not being operated. That deed was delivered by me to Mr. Copeland. He claimed that he was representing the railroad and those guarantors of the right of way. The guarantors were Wardlaw and others (naming them). There was something said about stock-gaps and crossings. There was an agreement about stock-gaps and crossings, and it was put into the deed. There was a suit pending between me and the defendant at the time this arrangement was made. The suit was about the right of way, the same right of way through this lot of land. This suit was settled by that arrangement. Mr. Copeland claimed to be representing the defendant in that suit. As a matter of fact he did represent it and was representing it in settling this claim in this record. That was the fact. There was another writing taken at the time the deed was drawn between me and Mr. Copeland and another party who was present; he also gave me a guaranty that they would see that stock-gaps and crossings were put in, and also signed these gentlemen's names to it. That paper contained about the same obligation and stipulation as in the deed. He put it in the deed. I told him that I wanted it in the deed, that I was to have that, that I would not give the deed until it was put in. Mr. Copeland signed the names of these parties to that instrument. He wrote that paper and also wrote the deed. The agreement that I spoke of was made at the same time the deed

was made, and the same was incorporated in the deed. The deed was delivered to Copeland, the agreement was delivered to me, both at the same time and place. After that these parties went on and built the railroad. This suit was dismissed. After that the railroad company went on and constructed its railroad through this lot of land. They completed the road and commenced [running] their trains through that same year. It was stipulated in that paper, signed by Wardlaw and others, that they would see that stock-gaps and crossings were put in and kept up by the railroad. There was a place left for a stock-gap on my place, and none made, left open during 1888 and 1889. There was a stock-gap put there I think in 1890, by defendant, etc. I did not release Wardlaw and others from the agreement to put in and keep up stock-gaps and crossings. I wanted the stock-gap and crossing, and Mr. Copeland told me that I would have to sue before I got it. I never had any agreement with these gentlemen at all. Copeland drew up the agreement and gave it to me. I do not know that I had an agreement with them since that agreement, by which I released them from that contract. Mr. Copeland told me to sue the railroad company. I did not know who Copeland represented, except what he told me. It was stipulated in the deed that if they did not put in stock-gaps the deed would be void. They went on and built the railroad and are still operating it. As a matter of fact, Copeland said he had authority in writing to sign that agreement. I do not know that I remember whether he showed it to me or not, but I remember distinctly that he said that he had authority to do it. Another witness testified that he was present when the agreement and deed were drawn; that he and Copeland were representing the guarantors of the right of way; that they met Fouché, a lawyer, who, witness's understanding was, was representing the Rome & Car-

rollton Construction Company (though witness does not know that), a few days before the agreement and deed were drawn about getting up the right of way through that country, plaintiff's lot of land being one; that there were several parcels through there over which they had not got the right of way at that time; that. Fouché told witness he, Fouché, represented the construction company as attorney, and witness had dealings with him as such, and Fouché told Copeland to agree to put in stock-gaps and crossings, and to put it in the deeds; that witness, Copeland and plaintiff met by appointment; that there was something said about stopping the injunction and going on building the railroad, getting the right of way; that the meeting was to get that matter settled; that Copeland drew the deed, plaintiff signed it and delivered it to Copeland, who accepted it; that plaintiff agreed that if it was embodied in the deed that they agreed to keep up stock-gaps and crossings and he was given the other paper, he would sign the deed and dismiss the case; that Copeland signed the agreement as attorney for Wardlaw and others, and witness signed his own name, and the agreement was given to plaintiff; that the construction company was getting up these rights of way; that Copeland represented the same parties; that the railroad company had nothing to do with these right of way matters.; that witness's recollection was, that Copeland and plaintiff talked about this bill in their conversation about the matter, but witness did not remember whether these attorneys were representing the railroad in that suit; that that was the matter "we" were trying to get out of the way, it was very seriously in the way; that Fouché and Copeland were seeking to accomplish that purpose to get the injunction out of the way; that witness did not know who the injunction was against, but it was the injunction that plaintiff had.

Copeland testified that the suit was settled just like a man who wanted to buy a horse with an execution against him would want the execution paid off; that the moving consideration to plaintiff was $300 paid him; that it was witness's recollection the attorneys' fees were to be paid, and that agreement was made at the time the suit was settled; that the construction company paid witness's fees, and he was acting at the time for the president of the construction company; that witness had no dealings with the railroad company or any of its officers; that the railroad company had nothing to do with procuring this right of way, if it had, witness knew nothing about it; that his understanding was that the deed was made to the railroad company instead of to the construction company, because after two years the construction company was to turn it over to the railroad company; that they were acting for themselves in the construction and were paid money to do what they did do—had always been witness's understanding about it from the officials of the company and its books.

W. W. Brookes and J. Branham, for plaintiff in error.
Payne & Walker, by brief, contra.