## 1830.   SMITH *v.* JOHNSON.

1. The evidence that a *portion* of the personalty levied on as the property
   of the defendant in fi. fa. was in fact the property of the claimant being
   undisputed, a verdict finding *all* the property subject to the fi. fa. was
   unauthorized.
2. In any case where the doing of a particular act is relevant to the issue,
   the sayings of the actor coincident with the act, or so nearly connected
   therewith in time as to be free from all suspicion of device or after-
   thought, are admissible in explanation, not only as illustrative of the
   true relationship of the actor to the act, but also as illustrative of the
   degree of weight and importance to be attached to the act in consequence
   of such connection or relationship as may be shown.
   (a) Declarations accompanying a purchase of guano and in relation thereto
   were admissible, if the fact of purchase was relevant.
3. The admission of testimony which is irrelevant and hearsay is likely
   to be peculiarly prejudicial to the party against whom it is offered,
   when he is the sole witness in his own behalf and it is in direct conflict
   with legal testimony on his part on the same point.
4. Declarations of a defendant in fi. fa. in a claim case are not admissible
   after the inception of the lis mota. Declarations of the defendant in
   fi. fa. as to the ownership of the property levied on, made after the
   filing of the suit which resulted in the rendition of the judgment against
   him, are admissions "after the pendency of the litigation," and are ex-
   cluded by the terms of the Civil Code (1895), § 5189 [Code of 1910,
   § 5776].

Certiorari; from Cherokee superior court—Judge Morris. Feb-
ruary 25, 1909.

A fi. fa. in favor of J. H. Johnson and against W. C. Smith
was levied on certain personal property. Mrs. W. C. Smith inter-
posed a claim. On the trial in the justice's court the jury found
the property subject to the fi. fa. The case was taken to the su-
perior court by certiorari, the claimant contending that the verdict

was contrary to law and without evidence to support it, and that errors were committed as follows: (1) the court overruled an objection to the testimony of W. C. Smith to the effect that he signed a note for the guano, the objection being that the note was the best evidence; (2) the court refused to allow the claimant to prove by W. C. Smith and by H. C. McAfee that when Smith bought the guano in question from McAfee, he said he was buying it for his wife; (3) E. M. Dobbs, the magistrate of Lickskillet district, sat with Medford, who presided; (4) the court, over the objection of the claimant, allowed the plaintiff in fi. fa. to testify that the defendant came to him in the spring of 1908 to buy guano, and he refused to sell it to him; (5) the court, over the objection of the claimant, permitted another witness to testify: "In February last the defendant in fi. fa. told me he was going to work at Canton, and that he had hired Bohannon to plow his crop;" (6) the plaintiff in fi. fa., over the objection of the claimant, was allowed to prove that the mother of the claimant told the witness in February that they had rented the farm to the defendant in fi. fa. On the hearing the judge of the superior court dismissed the certiorari; and the claimant excepts to this judgment.

*George D. Anderson, T. E. Latimer,* for plaintiff in error.
*J. E. Mozley,* contra.

RUSSELL, J. (After stating the foregoing facts.)

We think the trial judge erred in dismissing the certiorari. The evidence did not authorize the verdict finding all the property levied upon subject. It is uncontradicted that the hog and the heifer levied on were the property of the claimant. No effort was made to discredit the testimony establishing the fact that they were her property; and as there was no circumstance contradicting this testimony, it was not lawfully within the power of the jury to arbitrarily disregard it. Upon this ground alone, if for no other reason, the certiorari should have been sustained.

Though the error was perhaps harmless, the justice of the peace should have sustained the objection to proving the contents of the note by parol.

The justice erred also in refusing to allow the claimant to prove by W. C. Smith and H. C. McAfee that Smith stated, at the time that he contracted for the guano in question, that he was buying it for his wife. It was permissible on the part of the plaintiff to

show that Smith bought the guano, as this circumstance might tend to show that he bought it for himself. On the other hand, as the claimant contended that Smith was no more than her agent, and testimony to this effect was introduced, one of the material issues to be determined by the jury was whether Smith acted for himself or was merely an agent of the claimant in the purchase of the guano. If he was not her agent in the purchase of the guano, the inference (favorable to the plaintiff) which would naturally arise was that Smith purchased the guano for himself, and that therefore the crop upon which the guano was used and which had been levied on was the property of Smith, the defendant in fi. fa. If the jury found that Smith was the agent of the claimant and purchased the guano only as her agent, the inference just referred to could not be supported. But inasmuch as the plaintiff proved that the guano was purchased by Smith, whatever was said by Smith at the time of the purchase was a part of the res gestæ of the purchase, and admissible. The sayings of Smith, which the claimant proposed to prove, were made at the very time of the purchase and to the salesman from whom he purchased. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the res gestæ." Civil Code (1895), § 5179 [Code of 1910, § 5766]. If Smith was the claimant's agent in this matter, his statements went to prove the nature of the negotiations leading up to the purchase, and would be admissible upon the same principle as if he had died. The claimant's contention was that Smith was only her agent. "The sayings of an alleged agent dum fervet opus, whilst not evidence to prove his agency, may be looked to on the question whether he was acting as agent, there being other sufficient evidence to establish the agency." *Small* v. *Williams,* 87 *Ga.* 681 (2) (13 S. E. 589). See also *Chattanooga, Rome & Columbus R. Co.* v. *Davis,* 89 *Ga.* 708 (15 S. E. 626); *Myers* v. *Bernstein,* 102 *Ga.* 579 (27 S. E. 681).

The magistrate should have sustained the objection to the testimony to the effect that the defendant in fi. fa. tried to buy guano from him in the spring of 1908, and that he refused to sell it to him. And the testimony that the claimant's mother told the witness that they had rented the farm to the defendant in fi. fa. was not only irrelevant, but also mere hearsay. The admission of the

latter evidence could hardly fail to be prejudicial to the claimant, because it was not only illegal, but also in direct conflict with the testimony of the claimant, who swore that she, and not her husband, rented the farm from her father.

The testimony that the defendant in fi. fa. told the witness that he was going to work at Canton, and that he had hired Bohannon to plow his crop, was inadmissible and should have been excluded, because this statement was a declaration made after the pendency of the litigation, as will be pointed out hereafter in the discussion of another portion of the evidence.

We fail to see wherein the fact that the justice of the peace of Lickskillet district sat with Justice Medford, who presided, can afford any ground for complaint. Although we now know that Lickskillet district is not a myth, it is also disclosed by the record that the magistrate of this district took no part in the trial of the case now under review.

We have briefly referred to the assignments of error in the petition for certiorari. The controlling point which influences us to adjudge the claimant entitled to a new trial is the general assignment that the verdict is contrary to the evidence and without evidence to support it. A verdict rendered upon conflicting evidence should not be set aside unless errors on the part of the court induced or contributed to the finding; but if we omit from the record in this case illegal testimony, the admission of which the law forbids, and hearsay, which has no probative value and was erroneously admitted by the presiding magistrate of the justice's court, it can readily be seen that the verdict was necessarily largely dependent upon errors of the justice of the peace. Several witnesses were permitted to testify to declarations of the defendant in fi. fa., in direct contravention of section 5189 of the Civil Code of 1895 [Code of 1910, § 5776], which excludes the admissions of defendants in fi. fa., in claim cases, after the pendency of litigation. Besides the admissions to which we have heretofore referred, it appears that the levying constable was permitted to testify that at the very time that he levied the fi. fa., the defendant in fi. fa., after pointing to a field of cotton on the hill and stating that it was his wife's, said "This field is mine." The evidence fails to show that the claimant heard the conversation, so the testimony could not have been admitted upon the principle that the claimant's failure to deny or

explain the statement was a tacit admission on her part of its truth. This testimony was clearly inadmissible. In our opinion the decisions of our Supreme Court (by which we must be controlled as precedents) do not permit proof of any unsworn statement of a defendant in fi. fa., asserting or disclaiming ownership of property levied upon, unless the statement or admission in question preceded the levy. In other words, in the earlier (and therefore the controlling) rulings of the Supreme Court, the term "litigation," as employed in the code section, supra, in reference to admissions of defendants in fi. fa., is not confined merely to the determination of a possible issue which may arise after levy, between the plaintiff in fi. fa. and some possible claimant, but the term includes also the previous suit in which the fi. fa. had its origin. A levy is nothing more than the special proceeding or step in the suit by which the judgment may be made effective. This proceeding may be arrested by claim, or it may not be. But the original suit is none the less proceeding toward the enforcement of the right of the plaintiff in fi. fa., regardless of whether a claim be interposed or not. Regardless of what may be the true rule upon this subject, the plaintiff in error, the claimant in this small suit, we think should have another trial because of the errors already pointed out and which are not connected with this particular view of the case.

Even if it be insisted that the term "pendency of the litgation" relates no further back than the levy of the fi.. fa., the testimony as to the admission in question was illegal, because the admission must have been at least contemporaneous with the levy. The trial court seems to have been of the opinion that the pendency of the litigation began after the interposition of the claim, and that any declaration of the defendant in fi. fa. made prior to the filing of the claim, which tended either directly or circumstantially to prove his ownership of the property levied upon, was competent. We do not so understand the law. That the term "pendency of litigation," as related to defendants in fi. fa., and used as it is in the code section, supra, in referring exclusively to defendants in fi. fa., can not reasonably be given this construction has been frequently pointed out by the Supreme Court. Where a claimant, in order to secure the opening and conclusion, admits a prima facie case, the admission made is that the property was in the possession of the

defendant in fi. fa. at the time of the levy, or at some time between the date of the judgment and the levy; and from this possession arises a constructive presumption (upon which the plaintiff in fi. fa. may rely until it is rebutted) that the property in question belongs to the defendant in fi. fa. and is subject to the levy. From this is deduced the rule stated in *Smiley* v. *Padgett,* 123 *Ga.* 39 (50 S. E. 927), that "In the trial of a claim case, declarations of the defendant in execution, made up to the time of the levy and while he was in possession, that he owned the property levied on, are admissible in evidence, if there is any evidence that he was in possession of the property at the time of the levy; but if the evidence on the question of possession is conflicting, the jury should be instructed to disregard the declarations unless they believe that the defendant was in possession." In the present case, while the plaintiff in error admitted that the defendant in fi. fa. was in possession at the time of the levy, there was no evidence that placed the defendant in fi. fa. in possession of any of the property at any time between the rendition of the judgment and the levy, so as to rebut positive evidence to the effect that the claimant really had title to the property from the date of the judgment to the levy. For this reason the declarations were not admissible as admissions made by the defendant in possession as to the character and nature of his possession. The debt of the defendant to the plaintiff in fi. fa. was more than four years old; it may be (for it is not shown in the record) that the judgment upon which the execution issued was three or four years old, and the fi. fa. itself was issued in October, 1908, and the evidence that the title to all the property levied upon was in the claimant was not disputed by direct evidence.

In *Smiley* v. *Padgett,* supra, it was said by Justice Cobb: "Whenever there is evidence of possession in the defendant in execution at the time of the levy, his declarations may be admitted. In such a case, however, the jury should be instructed to disregard the declarations unless they believe from the evidence that he was in possession claiming the property as his own." In view of this ruling we have taken considerable pains to test the definition of the term "after the pendency of litigation," as used in the 4th exception to the general provision of the above-cited code section which permits proof of the admissions of parties, and we conclude that while the declarations of a defendant in fi. fa. shown to be in

possession at the time of the levy were held admissible in *Rutledge* v. *Hudson,* 80 *Ga.* 267 (6) (5 S. E. 93), cited in *Smiley* v. *Padgett,* supra, still the ruling in the *Rutledge* case is in conflict with the earlier decisions in this State. Not only is this so, but it is only when the reason of a rule ceases that the rule should cease; and such a construction of the term "pendency of litigation," used in a law which expressly forbids the introduction of the declarations of a defendant in fi. fa. after the "pendency of litigation," completely loses sight of the reason underlying the rule. It is true that in *Williams* v. *Kelsey,* 6 *Ga.* 375-6, Judge Warner says: "If it was a new question in our courts, it might be somewhat difficult to assign any technical legal reason for rejecting the witness;" but it would seem that the only substantial reason which could have influenced the legislature in expressly excluding from the operation of the rule (making competent the admissions of parties) declarations of a defendant in fi. fa. is that he is affected by the lis mota, and will be influenced by his interest to make declarations, not on oath, tending to support his interest, whatever it may be. The influence of the lis mota (construing the language of this code section according to the ordinary significance of the words used) is presumed to affect the defendant from the time the litigation pends against him.

The earlier adjudications upon this subject, hereinafter cited, excluded from evidence in a claim case any declarations of the defendant in fi. fa. in relation to the ownership of the property in dispute, made after he became a defendant by the institution of the suit against him. This would seem to accord with the reason underlying the rule; for from the very moment that the suit is brought, the defendant is subjected to the temptation, especially if he be insolvent, of making declarations favorable to a possible claimant through whom he might protect his property from the payment of his debts, or, in rare instances, of making statements which will be favorable to the plaintiff in fi. fa., and by means of which he hopes to subject some other person's property to the payment of his debts, and thereby at once relieve himself and provide immunity for acquisitions of property he hopes to make in future. In *Jones* v. *Dalby, Ga. Dec.,* part 1, 44, Judge Schley, delivering the opinion, said: "The question here presented is not whether the sayings of the defendant, after the relation of plaintiff

and defendant has been created, can be given in evidence for the claimant; as that question has been decided by the Judges: But, whether the defendant, whilst he was merely a *debtor,* his acts and admissions may not be given in evidence for the claimant, in relation to the property levied on—the Judges admit, that, according to the rules of evidence, he might be admitted, as he would be swearing against his interest; but after he becomes a defendant, his interest is sometimes for the claimant, and at other times against him, and therefore they have thought it a more safe rule to reject his sayings for either party; but the defendant's acts in relation to the property have uniformly been admitted, for either party; and the defendant has been considered such a party to the claim that he could not be sworn as a witness. But, prior to his being a *defendant,* there is no rule of evidence which will exclude his sayings, if against his ownership of the property, and the case will be governed by the usual rules of evidence, prior to his being a *defendant*—although he may be indebted at the time. In this case the sayings of the defendant, Dalby, were only allowed by the court before he was a *defendant*—he being only indebted to the plaintiff at the time, and not then a *defendant."*

The ruling in that case was approved in *Maxwell* v. *Harrison,* 8 *Ga.* 61, in which Judge Lumpkin, commenting thereon, says (p. 66): "In this last case the court held that where property levied on by execution is claimed by a third person, the declaration that the defendant in execution, *prior to his being defendant,* may be given in evidence to sustain the claimant's title—such declarations being presumptively against his interest. It will be perceived that this is not in conflict with the decision of this court as to the sayings of the defendant after the relation of plaintiff and defendant had been created." The only prior decision that we have been able to find to which it was possible that Judge Lumpkin referred was that in *Ray* v. *Justices,* 6 *Ga.* 303, in which the court held, under the rules of evidence then prevailing, that "a witness who is liable to action by the party for whom he is called, in case that party should not recover, is incompetent to testify, without a release." The rule approved in *Maxwell* v. *Harrison* was followed in *Smith* v. *Cox,* 20 *Ga.* 240, in which it was held that "the sayings of the defendant in the fi. fa. on which a claim case is founded, if against his interest when made, and made *before the commence-*

*ment of the suit which resulted in the fi. fa.,* are admissible as evidence for the claimant." And in *Horn* v. *Ross,* 20 *Ga.* 210, it was held only that the sayings of the defendant in fi. fa. against his interest, made *six months before* the existence of the debt on which the fi. fa. was founded, are admissible. In *Williams* v. *Kelsey,* supra, the declarations of the defendant were excluded because they were not made until after judgment had been rendered against him, and the special reason assigned for their exclusion was that the claimant's title was derived from the defendant, and that if the defendant was bound to uphold his title his interest was patent. In *Cloud* v. *Dupree,* 28 *Ga.* 173, the ruling in *Smith* v. *Cox,* supra, was reaffirmed. In *Powell* v. *Watts,* 72 *Ga.* 774, it is said: "Whether admissions made by the defendant, while in possession of the land claimed, in disparagement of his title, are competent, would, in some measure, depend upon the time at which they were made. If made, as it seems probable they were in this instance, *before the commencement of plaintiff's suit,* then there would, we think, be little doubt of their admissibility (8 *Ga.* 66, citing *Ga. Dec.,* part 1, p. 44; 20 *Ga.* 210, 240; 28 *Id.* 170), even in favor of the claimant; but it admits of more question, whether, in a contest between him and the claimant, where the rights of no third party had intervened, the latter could be affected by his declarations, made possibly after he had parted with the title." In *Hayes* v. *Hill,* 105 *Ga.* 299-300 (31 S. E. 166), the ruling was confined to a holding that it was error "to refuse to admit in evidence a letter written by the defendant in fi. fa., acknowledging the debt, before the pendency of the litigation or the existence of the claim which the plaintiff was seeking to enforce. In *Anderson* v. *Lewis,* 20 *Ga.* 383, the ruling in *Smith* v. *Cox,* supra, was reaffirmed. The ruling in the case of *Powell* v. *Watts* was followed in *Parrott* v. *Baker,* 82 *Ga.* 366 (9 S. E. 1068), Chief Justice Bleckley saying that as the judge below had followed the rule laid down in *Powell* v. *Watts,* "we shall not now reverse his ruling."

In *Tillman* v. *Fontaine,* 98 *Ga.* 673 (2) (27 S. E. 149), in a unanimous decision, it was ruled that "Declarations of the defendant in fi. fa., made after the suit was brought which resulted in the judgment the plaintiff was then seeking to enforce, and shortly before that judgment was rendered, to the effect that the defendant had sold the lands in question to the claimant, were not admissible

in the latter's favor." It appears, from the opinion in that case, that one of the objections made to the answer to the interrogatories was that the admission was made after the commencement of the suit which resulted in the judgment and fi. fa., and the trial judge overruled this objection. In ruling on this point, Chief Justice Simmons said: "We think the court erred in not ruling out this testimony. According to this testimony, the declaration of the defendant in fi. fa. here referred to was made pending the litigation which resulted in the judgment which the plaintiff in fi. fa. was seeking to enforce, and shortly before the judgment was rendered. Declarations of a defendant in fi. fa. made under such circumstances are not admissible in favor of the claimant. Code, § 3784 (4)." The point as to the admissibility of the defendant's declarations in the case at bar falls squarely under that ruling, and, in our opinion, is controlled by it. That case, it will be noted, is the only case in which the Supreme Court expressly construes the code section which has direct reference thereto; for section 3784 of the Code of 1882, which the Supreme Court was then construing, is the section cited in this opinion as section 5189 of the Civil Code of 1895. Examination shows that the ruling in *Tillman* v. *Fontaine,* supra, has not been reviewed or overruled. On the contrary, it has been cited as authority on the subject in 17 Cyc. 1101, 1214, 1215, and 1217, and the case of *James* v. *Taylor,* 93 *Ga.* 275 (20 S. E. 309), which is cited by Chief Justice Simmons in *Tillman* v. *Fontaine,* is cited in 16 Cyc. 998, and 17 Cyc. 1215, as authority for the statement that the declarations of a defendant in fi. fa. are not admissible, if made after the judgment was obtained or while the litigation was pending and with reference thereto. In *James* v. *Taylor,* supra, the claimant proposed to prove that one Sawyer, in 1890, proposed to trade with the defendant for the mare levied upon, and the defendant stated he could not trade it, because it belonged to the claimant. The evidence was repelled on the ground that the statement was made after the plaintiff's judgment against the defendant had been entered. It appears that in that case, as in the case at bar, the claimant admitted that the defendant was in possession at the time of the levy. From that ruling it appears to us, unless a distinction is created (without regard to the language of the code) between declarations made in favor of the claimant (as they usually are) and declarations made in favor of

the plaintiff in fi. fa., that any declarations made by the defendant in fi. fa., either after the judgment is rendered against himself or during the pendency of the litigation which results in the judgment, must be excluded by the express terms of the .code section, supra, and that the ruling in *Smiley* v. *Padgett,* supra, which apparently conflicts with the older ruling in *Tillman* v. *Fontaine,* supra, must yield to the prior adjudication. In *Foster* v. *Rutherford,* 20 *Ga.* 676, the declaration of the defendant in execution was held admissible only because it was made at a time when it was against his interest to make it.

In our view of the law, the claimant was entitled to a new trial because of the admission of declarations of the defendant which were illegal and inadmissible. One person should not be permitted to talk away the rights of another, and for that reason the legislature has wisely excluded the unsworn statements even of the mere nominal party in a claim case, unless it plainly appears that the statements made, although adverse to his own interest, were made at a time when he was absolutely disinterested in the result of a possible contest, for the reason that he could not foresee even that a contest would arise. If the decision of this case rested solely upon the proposition which we have taken the pains to investigate with some degree of patience and have discussed at some length, we should have certified the question involved to the Supreme Court, because we are bound by its construction of its decisions. As a decision of that question was not absolutely necessary to a decision of the case, much that we have said has been said for the purpose of directing attention to the subject, to the end that any apparent conflict in prior rulings may be harmonized, and the wise provisions of the code be enforced.   *Judgment reversed.*