No. 39.—CHARLES W. HORN, trustee for Mrs. Laodicea J. Harvard, plaintiff in error, *vs.* Ross & LEITCH, defendants in error.

[1.] The presumption, that the seizure of property sufficient in value to satisfy a *fi. fa.* has satisfied it, is not rebutted by merely showing that the property was sold on *the same day on which it was seized*, and that the proceeds of the sale were applied to debts of higher lien. In such a case, it is necessary to show that though the sale was irregular, the property brought its full value, or that the property, rated at its full value, would not have been sufficient to satisfy the debts of higher lien, and also that *fi. fa.*

[2.] In a claim case, the sayings of the defendant in *fi. fa.* against his interest, made six months before the existence of the debt on which the *fi. fa.* was founded, are admissible in evidence against the plaintiff in the claim case.

[3.] In a claim case, the Court told the Jury, that if the property claimed ever once completely vested in the defendant in *fi. fa.* and he made a voluntary gift of it to his wife, and this was all his property, and afterwards, he contracted large debts, the deed was fraudulent and void: *Held*, that this charge was erroneous.

Claim, in Baker Superior Court. Decided by Judge AL-LEN, May Term, 1856.

A *fi. fa.* in favor of Ross & Leitch against Thornbury & Harvard, bearing date the 23d of December, 1852, was levied on six negroes, as the property of Harvard, one of the defendants, and a claim to the negroes interposed by Charles W. Horn, trustee for Mrs. Laodicea J. Harvard. The claim case came on for trial at May Term, 1856, of Baker Superior Court, when plaintiff in *fi. fa.* introduced the following evidence :

1st. The *fi. fa.* by virtue of which the levy was made, the same being for $65 83 principal, and $4 02 interest. Upon the back of said *fi. fa.* were the following entries :

"Levied the within *fi. fa.* on five negroes, viz: Vina, Jo-

·seph, Abe, Amanda and infant child. . Property pointed out by plaintiff's Attorney, January 4th, 1853.

    (Signed)        GEO. W. COLLIER, Sh'ff."

"The above property sold this day, and money of four of the negroes applied to mortgage *fi. fa.* M. Whitfield *vs.* J. N. Thornbury. The other negro brought one hundred and ·one dollars and fifty cents, and money held up subject to the order of the Court. January 4th, 1853.

    (Signed) .        GEO. W. COLLIER, Sh'ff."

"Money ruled out and paid to order of Court. April, 1853.    (Signed)        GEO. W. COLLIER, Sh'ff."

"Levied the within *fi. fa.* on one negro fellow, of yellow complexion, by the name of Caswell, as the property of defendants, this June 30th, 1853.

    (Signed)        W. A. IVEY, Sh'ff."

"Levied the within *fi. fa.* on six negroes, to-wit: Caswell, a man about 23 years old, Sarah a woman about 20 years old, Haney a woman about 25 years old, Fanny a girl about 15 years, Ashley a boy about 17 years old, and Nancy a girl about 6 years old. All levied on as the property of John J. Harvard, one of the defendants, this Aug. 23d, 1853.

    (Signed)        W. A. IVEY, Sh'ff." ·

2d. The following order from the minutes of said Court:

"*Baker Superior Court, April Term,* 1853. *Thursday, April 28th,* 1853.

| Wood, Bradley & Co. *vs.* James W. Thornbury. | S. M. Wiley & Co. *vs.* Thornbury & Harvard. |
|---|---|

It appearing to the Court that George W. Collier has in hand one hundred and one dollars, less the cost, raised by the sale of property of James W. Thornbury, it is here-

by ordered that said Sheriff pay over one-half of said sum to R. K. Hines, Attorney for Wood, Bradley & Co. and the other half to R. F. Lyon, Attorney for S. M. Wiley & Co. Ross & Leitch, after deducting all the cost on the executions in the Superior and Inferior Courts of same date."

Counsel for claimant objected to the admission in evidence of said *fi. fa.* with the entries thereon, and said order, on the following grounds :

Because the levy and sale of the 4th of January, 1853, both took place on the same day.

Because the return of the Sheriff that the money for which four negroes sold, was applied to a mortgage *fi. fa.* in favor of M. Whitfield, does not sufficiently account for the money arising from the sale of the four negroes, but it was incumbent on the plaintiff to show *aliunde* that the money so raised was properly and legally applied, or that the mortgage *fi. fa.* was the oldest and entitled to the money.

Because it was incumbent on the plaintiff to show what amount of money was raised, (as the amount no where appears on the *fi. fa.*) and how much was paid over to the mortgage *fi. fa.*

Because the levy of the *fi. fa.* on the five negroes on the 4th of January, 1853, was a satisfaction of the *fi. fa.* so far as to throw upon the plaintiff the burden of proving the amount the negroes sold for, and that it was properly applied, and that the proceeds of said sale were applied to the extinguishment of prior liens, or that it was otherwise unproductive and made so without fault in the plaintiff or levying officer.

Because the fact that the levy and sale were made on the same day, *prima facie* evidence of fraud requiring explanation.

Because the order entered on the minutes to explain what became of the one hundred and one dollars, is too vague and general, and does not sufficiently explain what was done with the money, and the plaintiff should be held to show how and

in what way it was applied, to what executions it was paid, and if not to any executions, what has become of it.

The Court over-ruled all these objections and permitted the *fi. fa.* and order to go in evidence to the Jury; to which claimant's Counsel excepted.

3d. Plaintiff then introduced Charles W. Horn, the claim-ant, who testified that all the negroes levied on and claimed by him, were negroes which Mrs. Laodicea· J. Harvard had inherited from her father's estate; that she inherited other ne-groes from her grand-father, but those levied on came from the estate of her father, Benjamin W. Hampton, and that since her marriage with Harvard the negroes had been in his possession and under his control; that he did not recollect the exact time when Harvard moved from Thomasville to Albany, but thinks it was in the latter part of the year 1850, or the early part of 1851.

Plaintiff here closed, and the following evidence was intro-duced by claimant:

1st. A deed, of which the following is a copy:

State of Georgia, Thomas County:

This indenture, made this twenty-fourth day of July eigh-teen hundred and fifty, between John Harvard, of the Coun-ty and State aforesaid, of the one part, and William L. Hampton, of the County of Baker and State aforesaid of the other part, witnesseth, that heretofore John Harvard and Laodicea Jane Harvard, wife of said John Harvard, prior to her marriage, Leora Jane Hampton, intermarried with each other; that prior thereto, and in consideration of such marriage, it was agreed that said Leora Jane Hampton should hold, keep, retain and have the separate right of her prop-erty, for the use, maintenance and support of the said Leora and John after marriage. Now this indenture witnesseth, as well for the consideration aforesaid as also the consideration of ten dollars, by the said William L. Hampton, trustee, as hereinbefore named, paid to the said John Harvard, at and

before the sealing of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and doth by these presents grant, bargain, sell and convey, unto the said William L. Hampton, in trust, and trust only, for the benefit, use and interest of the said Leora Jane, and such child or children as she may have by, or may be begotten by, her present husband, John Harvard, the following slaves, viz: Caswell, a man, Haney a woman, Ashley a boy, Sarah a woman, Nancy a girl and Fanny a girl: To have and to hold the said bargained slaves, unto the said William L. Hampton, in trust, and trust only, for the use, interests and trust purposes aforesaid, and for no other purpose, interest or use whatever, to him and his heirs forever. But should the said John Harvard survive the said Leora Jane, the said slaves are to be held in and continue in trust in the said William L. Hampton, for the use of the said John Harvard his life-time; and the said John Harvard, for himself, his heirs and assigns, the title to said slaves doth hereby vest the same in said William L. Hampton, for the purposes aforesaid. In witness whereof the said John Harvard hath hereunto set his hand and seal, the day and year above written. (Signed) JOHN J. HARVARD, [L.S.]

Signed, executed and delivered in presence of

(Signed)   WILLIAM H. DASHER,
        JOHN MILLER,
        THOMAS M. BOSTON, J. I. C."

This deed was recorded July 26th, 1850, in the County of Thomas; and on the 4th of March, 1852, in the County of Baker.

2d. Claimant then introduced the record of the proceedings appointing him, Charles W. Horn, trustee, in lieu of William L. Hampton, deceased.

3d. JAMES D. HAMPTON testified, that before the marriage of his neice, Mrs. Laodicea J. Harvard, with John J. Harvard, (one of the defendants in *fi. fa.*) Mrs. Hampton, the sister-in-law of witness, and mother of said Laodicea, being

Horn, trustee, vs. Ross & Leitch.

opposed to the marriage, because she knew nothing about said John J. requested witness to see him and ascertain something about him; witness saw Harvard and stated to him, among other things, the grounds of Mrs. Hampton's objections to the marriage, and Harvard referred witness to gentlemen in Alabama, where he then lived, for his character ; and assured witness that he did not desire to marry witness' neice for her property, but that so far as the property was concerned, he would and had intended to settle all the property coming to his intended wife from her father's estate, upon her, and desired witness to accept the trusteeship, and act as her trustee; for which witness refused to do ; witness afterwards saw Mrs. Hampton and her daughter, and told them what Harvard had agreed to do; Mrs. Hampton, upon condition of the settlement, expressed herself satisfied, and assented to the marriage; in the course of the conversation, her daughter said she intended to marry Harvard any way, whether her mother was willing or not.   Witness also stated, that the negroes levied on were all inherited by Mrs. Harvard from her father's estate, and at the time of her marriage, were in the possession of the administrator of her father's estate ; that since her marriage, she has inherited other negroes from her grand-father's estate.

4th. SAMUEL DICKERSON testified, that Harvard came to Albany and went into business the latter part of 1850, and moved his family in the early part of 1851.

Plaintiff then introduced in rebuttal DAVID A. VASON, who stated that Harvard came to Albany and went into business with Thornbury in the winter of 1850.

Plaintiff also introduced the declarations in the following suits, and the notes upon which they were founded, together with the fi. fas. issuing from the judgments obtained, to-wit: one in favor of L. M. Wiley & Co. vs. Thornbury & Harvard, on a note dated March 12th, 1851, and due six months after date, for $278 28 ; one in favor of Marion & North vs. the same parties on a note dated March 8th, 1851, and due 8 months after date, for $173 55; one in favor of Ross &

Leitch *vs.* the same parties on a note dated March 6th, 1851, and due nine months after date, for $198 45, and several others for different amounts of the same dates.

The evidence having closed, plaintiff's Counsel requested the Court to charge the Jury, that the recital in the deed made by Harvard to William L. Hampton, trustee, to the effect, " that prior to the marriage, and in consideration thereof, it was agreed that the said Leodicea Jane Hampton should hold, keep, retain and have the separate right of her property, for the use, maintenance and support of the said Leodicea and John after marriage," was no evidence of an ante-nuptial contract between Harvard and his wife, and the Jury must not so receive it.

Counsel for claimant requested the Court to charge—

1st. That if there was *aliunde* testimony of the existence of such a contract prior to the marriage, the Jury ought to consider the recital in the deed as evidence of the existence of the contract, it being an admission by Harvard against his interest.

2d. Claimant's Counsel also requested the Court, in writing, to charge, " that if the Jury should believe there was an agreement between Harvard and his wife to settle the property upon her before the marriage, then, a Court of Equity will, at any time after the marriage, enforce the contract, and settle the property upon the wife. If it be true, that there was such a contract made, Harvard never had a title to the property, for the equitable title was in his wife, and it is good against creditors.

3d. " That if the Jury should believe there was no such contract made, then, if Harvard voluntarily settled the property that she inherited from her father's estate as a distributee, upon her, in consideration of personal property having come to her as distributee or legatee, then, in that case, it is a good and valid settlement, and will be good against all subsequent creditors."

4th. That the property in dispute is personal property.

5th. That to attack a voluntary settlement for fraud, there

Horn, trustee, vs. Ross & Leitch.

must either be some positive evidence, or strong presumptive. evidence of fraud.

The Court refused to charge the 1st and 2d requests in the language requested, but charged the 3d, 4th and 5th.

The Court then charged the Jury, that the recital in the. deed was no evidence of an antenuptial contract, and they could not so consider it ; that if they should believe from the testimony that there had been an antenuptial agreement proved, by which the property claimed was to be settled on Mrs. Harvard, and it was so settled, then, the title in the trustee to the property was a good title, and the property was. not subject to the debts of Harvard; and in order for the Jury to determine whether such an agreement was made or· not, they must be satisfied that Mrs. Harvard actually stipu-. lated with Harvard for such a settlement to be made before the marriage. If it was only talked about between the parties, without any agreement, it was no contract; and the subsequent act of Harvard, in making the deed, will not make it a good antenuptial agreement. But if the Jury should conclude that no antenuptial agreement had been proved, it would be their duty to determine whether, under the testimony, it was good as a voluntary deed, or postnuptial set-. tlement. If the deed was made by Harvard in good faith,. and not for the purpose of defrauding creditors, it secured a. good title in the trustee, although made after marriage, and would be good against subsequent creditors ; but if it was made to defraud creditors, the property conveyed by it would be subject to the debts of Harvard. If Harvard took possession of the property after the marriage, without an antenuptial agreement, and had it under his control, it vested title in him—his marital rights obtained, and the property was his ; and if this was all the property Harvard had, and Harvard made a voluntary gift of it to his wife, and immediately afterwards contracted large debts, it was evidence of fraud, and was void as against creditors.

Counsel for claimant then requested the Court to charge

the requests they had submitted in writing. The Court said he had charged them substantially, but not in the language requested; and the Court refused to charge them in the language as requested, and also refused to read them to the Jury.

After the general charge of the Court was concluded, Counsel for claimant asked the Judge if he was rightly understood—to charge the Jury, " that if Harvard had got possession of the property of his wife after his marriage, without any antenuptial agreement, and then made the deed of settlement, it was a voluntary settlement." The Court responded, that it had so charged.

Claimant's Counsel then asked the Court to charge the Jury, that if they believed Harvard promised his wife's uncle, James D. Hampton, before the marriage, to settle her property on her, it was proper for their consideration to show the truth of the recital in the deed, that an agreement to do so did exist at the time of the marriage. This request the Court gave in charge.

Then Counsel for plaintiff in *fi. fa.* requested the Court to charge the Jury, that the declaration of Mrs. Harvard before her marriage, and in presence of her mother, and on being informed by her uncle that Harvard had promised to settle her property on her, " that she intended to marry him any how," was evidence going to show that no agreement existed at the time of the marriage, to settle the property.

The Court remarked to the Jury, "that is true, and I so charge you."

The Jury found a verdict subjecting the property; and Counsel for claimant now assign as error the general charge of the Court to the Jury, and the charges given at the instance of plaintiff's Counsel; also, the refusal of the Court to charge in the language of the requests submitted by claimant's Counsel; and the admission of plaintiff's *fi. fa.* with the entries thereon, in evidence.

Horn, trustee, *vs.* Ross &  Leitch.

HENRY MORGAN and LOTT WARREN, for plaintiff in error.

R. F. LYON and R. H. CLARK, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the Court below right in over-ruling the objections to the admission in evidence of the claim *fi. fa.* ?

The *fi. fa.* was for only $65 83. It had on its back an entry, stating that it had been levied on five negroes. This entry bore date the 4th of January, 1833. The *fi. fa.* had also on its back, another entry of the *same date,* stating that the negroes levied on had been sold on that day; and that the money for which four of them sold, had been applied to a mortgage *fi. fa.;* and that the money for which the fifth sold, had been held up subject to the order of the Court.

As to the money arising from the sale of the fifth negro, the Court ordered it to be applied to other *fi. fas.*

The main objection to the admission of the *fi. fa.* was, that the entries on its back showed it to be satisfied.

When a *fi. fa.* has been levied on personal property, sufficient in value to satisfy the *fi. fa.* the presumption is, that it has been satisfied.

This presumption may, however, be rebutted, by showing that the property, at its true *value*, was applied to higher demands on the property; and showing that the property was sold at a regular sale, and that the money arising from the sale was applied to such higher demands, would be showing that the property, at its true value, was so applied; because, it is to be presumed that property sold at a regular sale, fetches its true value. But, showing that the property was sold at an irregular sale, as that it was sold on the same day on which it was seized; and therefore, that it was sold in the absence of advertisement; and then, showing that the proceeds of such irregular sale were applied to such higher demands, would *not* be showing that the property, at its true

Horn, trustee, *vs.* Ross & Leitch.

value, was so applied; for, it is to be presumed that property sold in such an irregular and hasty manner, would not fetch its full value. Therefore, such a showing as this, would not rebut the presumption of satisfaction arising from the levy's being on property sufficient, in value, to satisfy the *fi. fa.*

And such a showing as this, was the showing of this plaintiff in *fi. fa.* in respect to the levy entered on the *fi. fa.* The showing was therefore not sufficient.

[1.] He ought to have shown that the property, though sold irregularly, brought its full value; and yet, did not bring enough to do more than satisfy the higher demands upon it; or, at least, he ought to have shown that the property, when rated at its full value, would not have been sufficient to do more than satisfy such higher demands.

Not having done this, his *fi. fa.* as we think, ought not to have been received in evidence.

The other objections to the admission of the *fi. fa.* resolve themselves into this: that it does not sufficiently appear that the debts to which the proceeds of the sale, irregular as it was, were applied, had priority over the *fi. fa.* What does appear, amounts to this: that all the proceeds of the sale were applied by the Sheriff, acting either on his own responsibility, or acting under an order of the Court, to other debts. And *prima facie*, it is to be presumed, that this was a proper application of them; for, *prima facie*, it is to be presumed, of all officers, that they do not violate their duty.

The deed of settlement contained a recital of an antenuptial contract. This recital, the claimant contended, was evidence for him.

The Court held that it was not. Was the Court right?

It is a general principle, that declarations made by a person, if they are adverse to his interest when made, are evidence against him, and against all persons claiming under him by a right arising subsequent to the declarations. (*Ivat vs. Finch;* 1 *Taunt.* 161; 2 *Phil. Ev. Cow. & Hill's Notes,* note 481.)

Horn, trustee, &c. *vs.* Ross & Leitch.

Recitals in a deed are but the declarations of the author of the deed. (*1 d. note* 869.)

Harvard was one of the makers of the deed of settlement; and therefore, was one of the makers of the recital contained in that deed.

He was also the defendant in the claim *fi. fa.*—the *fi. fa.* that was seeking to condemn the property settled by the deed.

Now the plaintiff in the *fi. fa.* in a claim case, can rely upon no title but that of the defendant in the *fi. fa.* He is in *privity* with the defendant in the *fi. fa.*

Therefore, the plaintiffs in this case were in privity with Harvard—they had to claim under him.

The only question remaining, therefore, is this: did they claim under him by a right that arose subsequently to the date of the deed, and consequently, to the date of the recital? And the answer is, that they did. The note on which their *fi. fa.* was founded, was made on the 6th of March, 1851. The deed was made on the 24th of July, 1850.

This being so, the recital, when made, was against the interest of Harvard.

It follows, then, that by the general principle above stated, the recital was evidence against Harvard, and also against the plaintiffs in *fi. fa.* for they claimed under him.

Is there anything in this case to take such a recital out of the general rule? It is said that there is. It is said that there is something in the nature of a claim case, that forbids the admissions of the defendant in *fi. fa.* even though made against his interest, from being received in evidence for the claimant; and yet, a *claim* is but a statutory substitute for certain Common Law forms of action that, themselves, do not have any such effect. By an action of trespass against the Sheriff, or an action of trover against the purchaser, the claimant can attain, in substance, all that he can attain by a claim. And in an action taking either of these two forms, he would have the right to use the sayings of the defendant in *fi. fa.* if adverse to the defendant's interest, as evidence;

and his action may still take either of these forms. I am wrong, to say that the claim is a statutory *substitute* for them. It is not a substitute for them. It is a form in *addition* to them—a form by which, what they would accomplish, is accomplished more simply. Did the Statute giving this form, repeal any rule of evidence, so far as this form was concerned? Did it repeal anything? No.

There is not any decision of this Court that goes the length of determining, that sayings of the defendant in *fi. fa.* adverse to his interest, made not only before the origin of the claim case, but before the origin of the debt on which the claim *fi. fa.* is founded, are inadmissible for the claimant. But that is the length to which the decision of the Court below, in this case, goes.

[2.] We think, therefore, that the recital was *prima facie* evidence for the claimant; and consequently, that the Court erred in charging that it was not evidence for him.

The Court, in the course of its charge, told the Jury, that "If Harvard took possession of the property after the marriage, without an antenuptial agreement, and had it under his control, it vested title in him—his marital rights obtained, and the property was his; and if this was all the property Harvard had, and Harvard made a voluntary gift of it to his wife, and immediately afterwards contracted large debts, it was evidence of fraud, and was void against creditors." By the words, "*immediately* afterwards," we understand the Court to have had reference to the facts of the case; and therefore, to have intended the interval of time between the making of the deed and the contracting of the debt.

And with this import to those words, the charge amounts to this: that if the property once vested in Harvard, and it was all he had, and he made a voluntary gift of it to his wife; and not more than six or seven months afterwards, contracted large debts, the gift was fraudulent, as against creditors; and was therefore void as to creditors; that is to say, that so contracting such debts was *conclusive* evidence of fraud against creditors. Is this so?

Horn, trustee, vs. Ross & Leitch.

What shall be the answer to this question, depends upon what is the meaning of the 13th *Eliz. ch.* 5, the abstract of which, in *Cobb's Digest,* is as follows : "That every convey-ance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution that shall be had or made to delay or defraud creditors or others of their debts and other rights, shall be void as against such credi-tors, &c. and them only. But that the Act shall not extend to any conveyance on good consideration, and *bona fide* to persons without notice of the fraud."

Unless a deed *be made* with the intention to delay or de-fraud creditors and others, it is plain that it is not within the Act.

Now when a man makes a voluntary deed of even all his property, it is at least a *possible* thing that he does not in-tend to defraud some person who may become his creditor six months afterwards. The man may think that he will never go in debt to any body; the subject of his going in debt may not be in his mind; he may feel that if he ever does go in debt, he will be able to pay out by his future ac-quisitions. If any of these things be true of him, it is man-ifest that he does not, at the time when he makes the deed, intend, by the deed, to defraud his future creditors.

Yet, the charge says, in effect, that it is *not possible* for a man to make such a deed without intending, at the time, to defraud every person who may, in six months afterwards, become his creditor.

[3.] And therefore, we think the charge too general and sweeping.

Had the Court told the Jury, that if the circumstances which the Court enumerates existed, they would constitute such evidence of fraud, that it would be necessary for the claimant to rebut them, in order to prevent the deed from being considered fraudulent and void, the Court would have told them what, in the opinion of one member of this Court, is now law; and what, in the opinion of the other two mem-

Horn, trustee, *vs.* Ross & Leitch.

bers, was law until the passage of the Act of 1847, "to require marriage settlements to be recorded."

The view which has been presented of the Statute of the 13 *Eliz. ch.* 5, may not be in accordance with the later English decisions. But we think it sufficiently supported by such as existed at the time when the law of England became the law of Georgia. The Supreme Court of the United States say, "There is some contrariety and some ambiguity in the old cases on this subject. But this Court conceives that the modern decisions, establishing the absolute conclusiveness of a subsequent sale, to fix fraud on a family settlement, made without valuable consideration—fraud, not to be repelled by any circumstances whatever, go beyond the construction which prevailed at the American Revolution, and ought not to be followed." (1 *Story's Eq.* §431.)

In the opinion of Judge LUMPKIN and myself, however, the Statute aforesaid of 1847, has much to do with the question under consideration.

The third section of that Act is in the following words : "If any such instrument" (marriage agreement or settlement) "be not recorded within the time prescribed by this Act, the same shall not be of any force or effect against a *bona fide* purchaser, without notice, or *bona fide* creditor, without notice, or *bona fide* surety, without notice, who may purchase, or give credit, or become surety, before the actual recording of the same."

In the opinion of Judge LUMPKIN and myself, the natural, if not the necessary, implication from this language is, that if the instrument be recorded within the time prescribed by the Act, it shall be of force even against a *bona fide* purchaser, without notice, a *bona fide* creditor, without notice, or a *bona fide* surety, without notice; and therefore, we think that if a voluntary marriage agreement be duly recorded, the *presumption* must be, that it is *not* fraudulent; and that this is a presumption to be rebutted only by showing something that would amount to *positive, actual* fraud: Such, for example, as the settler's hiding the record book and inducing the Clerk

to tell the person inquiring for it, that it contained no record of a marriage settlement, when it did contain the record of one.

This Act ought certainly to receive the same kind of construction which the other Registry Acts have received.

This marriage settlement was recorded in time. It was made on the 24th of July, 1850, and was recorded on the 26th.

The creditor had, therefore, in this case, more than six months record-notice of the settlement.

On the remaining point in the case, we express no opinion. The bill of exceptions does not disclose whether Mrs. Harvard, at the time when she said "she intended to marry Harvard anyhow," was under age, nor, if she was, who was. her guardian; nor does it distinctly disclose in whose actual possession the property was at that time, or was at the time when it was turned over to Harvard. And these are matters which affect the law of the point.

The new trial which we grant is founded, therefore, upon the points previously considered.