Brown *vs.* Spivey.

---

WILLIAM R. BROWN, plaintiff in error, *vs.* JAMES A. SPIVEY, trustee, defendant in error.

1. A *bona fide* creditor, to avail himself of the failure to record a voluntary settlement of the husband upon the wife in the county of the residence of the husband, within three months after its execution, must have become such before the actual record of the same, on the faith of the property embraced in the settlement.
2. A voluntary conveyance made by a husband, solvent at the time, to his wife and children, is binding as against creditors.

Husband and wife. Registry. Marriage settlement. Fraudulent conveyance. Debtor and creditor. Before Judge HILL. Houston Superior Court. May Term, 1874.

For the facts of this case, see decision.

POE, HALL & LOFTON, for plaintiff in error.

S. D. KILLEN, for defendant.

WARNER, Chief Justice.

This was a claim case, on the trial of which, the following facts are disclosed in the record:

In 1859, Henry Brown, the father and testator of plaintiff, sold to James A. Spivey, half of lot of land number fifty-five, fifteenth district, Macon county, for $900 00. Defendant paid plaintiff, as executor of Henry Brown, all of this amount

except the sum of $258 37, for which sum he gave plaintiff his note, 26th December, 1867, due at one day. On this note, plaintiff instituted suit on the 31st of December, 1869, returnable to the next term of Houston superior court, and judgment was rendered in this suit on the 12th day of December, 1870, and execution issued thereon 23d December, 1870 ; this execution was levied on the land in question, 3d October, 1871. On the 2d of October, 1868, Spivey, then a resident of Macon county, exchanged with Dennard, one thousand six hundred and fifty acres of land in Macon county for two places in Houston county, the one levied on, and another called Oaktucky ; the place levied on containing between five and six hundred acres of land was rated in the exchange at $10,000 00, and for that consideration, Dennard, by Spivey's direction, conveyed the same to Spivey to hold in trust for his wife and children. This deed bore date on the day and year aforesaid, and was attested by Samuel D. Killen, and T. M. Killen, deputy clerk of the superior court of Houston county. There was nothing else that purported to be an official attestation, and there was no proof of the execution of the deed ; thus attested it was recorded by the clerk of the superior court of Houston county on 29th December, 1869; it was never recorded at all in Macon county, the residence of Spivey (the husband,) at the time of the settlement. It was shown at the time of this transaction, that Spivey was indebted between $4,000 00 and $6,000 00; that he retained property over and above the voluntary settlement at the estimate he and others placed upon it — worth between $12,000 00 and $15,000 00—that most of this property had been disposed of by him ; that he resided with his wife and children on the place embraced in the settlement, and controlled it, and had done so since his removal to the place. He also testified when on the stand, that in making this voluntary settlement upon his family, he had no intention or design of delaying, hindering or defrauding his creditors, to which testimony plaintiffs objected, upon the ground that this was an inference which the jury, and not the witness,

might draw from the facts and circumstances given in the evidence, which objection was overruled and plaintiff excepted.

Plaintiff also requested the court, in writing, to charge the following, which the court refused, viz.: "That if the jury believed, from the testimony, that Spivey procured the deed from Dennard to him as trustee for his wife and children, and paid him the consideration therefor, then this was a voluntary settlement by Spivey on his wife and children, and the deed should have been recorded in the county of Spivey's residence within three months from the time it was made, and upon failure to make such record of the said deed within the time prescribed and as above set forth, the same would not be of any force or effect against a creditor who, *bona fide* and without notice, may have become such before the actual recording thereof.

"That the failure to record such deed within the time prescribed by law was, in legal contemplation, a concealment of the same and a badge of fraud, especially if it appears from the evidence that the defendant was in possession of and controlling the land levied upon. That any violation of the policy which the law prescribes, and which might work injury to the rights of a third person, was legal, though not actual, fraud.

"That if defendant had applied to the courts to set apart a homestead and exemption for his family, and this land had been so set apart, it would not have prevailed against this debt, if they believed that the debt was in existence prior to the passage of the law authorizing the laying out and setting apart of a homestead; and what the defendant could not do with, he could not do without, the sanction of the courts.

"That if the jury should believe that the execution levied, was for the purchase money of a piece of land which Spivey exchanged for the land settled on his family, and that Spivey bought the land exchanged from Brown's father and testator, then the land settled should be held subject to the extent to

which that purchased from Brown's testator entered into the exchange.

"That while the mere fact that a man was indebted at the time of making a gift would not render the gift void, yet if it be founded merely upon a good consideration, such as blood or affection, it may be set aside, if it appears that the party making it was in embarrassed circumstances when it was made, for a man must be just before he is generous, and is bound, both legally and morally, to pay his debts before giving away his property."

The court then charged, " that if Spivey was not insolvent at the time of making the conveyance—that is, if he was not unable to pay his debts, then he had not only a right to make such gift, *but it was his duty to make provision for his family,* and the transaction would be good and valid against this claim. That the fact that the land purchased of Brown's father and testator was a part of the consideration for the exchange of the land settled, did not strengthen the plaintiff's equity."

To which charge as given, and refusal to charge as requested, the plaintiff excepted.

The court also charged the jury, at the request of plaintiff, "that although the defendant in execution may have disavowed any fraudulent intent in the procurement of the deed, yet this is a conclusion to which the jury should not assent, if all the facts and circumstances given in evidence go to show the contrary." The jury found the property not subject.

1. The note on which the judgment was obtained was given by the defendant, on the 26th of December, 1867, and due one day after date. The deed executed by Dennard, conveying the land levied on to the defendant in trust for his wife and children, was executed on the 2d October, 1868, but was not recorded in the county of Macon, where the defendant resided at the time the settlement upon his wife and children was made. It is insisted for the plaintiff here, that he is such a creditor as is contemplated by the 1778th section of the Code, and that the settlement made by the defendant on the

2d of October, 1868, upon his wife and children, has no force or effect as against him as such a creditor. That section of the Code, (which substantially embodies the provisions of the act of 1847, as interpreted by this court,) declares that "every marriage contract, and every voluntary settlement made by the husband on the wife, whether in execution of marriage articles, or not, must be recorded in the office of the clerk of the superior court of the county of the residence of the husband, within three months after the execution thereof. On failure to comply with this provision, such contract or settlement, shall not be of any force or effect against a purchaser, or creditor, or surety, who *bona fide*, and without notice, may become such before the actual recording of the same. Who is a *bona fide* creditor within the true intent and meaning of the statute? A *bona fide* creditor is one who gives credit to the husband on the faith of the property contained in the marriage settlement: *Cloud & Schackleford vs. Dupree*, 28 *Georgia Reports*, 173 ; *Cunningham et al. vs Schley et al.*, 41 *Georgia Reports*, 435. The creditor of the husband must become such on the faith of the property contained in the settlement before the actual recording of the same. The contract in this case was made by the creditor with the defendant, several months before the execution of the settlement. But it is said, although this may have been so, still, the creditor indulged the defendant, extended his credit on the note upon the faith of the property embraced in the settlement. There is no more evidence in the record that the defendant's credit was extended on the faith of that property, than there is that the debt was originally contracted on the faith of that particular property. For aught that appears in the record, the credit was given to the defendant upon the faith of his other property, as that it was given on the faith of the property contained in the deed of settlement. In our judgment, the plaintiff in this case, was not such a *bone fide* creditor of the defendant as is contemplated by the section of the Code before cited.

2. The next question to be considered is, whether the vol-

untary conveyance was void as against creditors, under the 1952d section of the Code, which declares that every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance, shall be fraudulent in law against creditors, and as to them null and void. The weight of the evidence in the record is, we think, in favor of the solvency of the defendant at the time of the execution of the voluntary deed of settlement upon his wife and children—at any rate, that was a question for the jury under the charge of the court, and there was no motion for a new trial on the ground that the verdict was contrary to the evidence. The court, in its charge to the jury, stated the law applicable to this branch of the case, substantially correctly, though it would have been a better *legal* charge if the court had omitted to have said anything about the *moral* duty of the defendant to make provision for his family. In view of the facts disclosed in the record of this case we find no material error in the refusal of the court to charge as requested, or in the charge as given to the jury.

Let the judgment of the court below be affirmed.