COTHRAN, trustee, *vs.* FORSYTH, administrator.

1. Hearsay evidence is not admissible.

(*a.*) It is not competent to prove by a witness what was the intention of another person, without giving any facts as a basis for such conclusion.

2. In a claim case, the claimant admitted possession in the defendant in *fi. fa.* after judgment, and assumed the *onus.* He was a witness in his own behalf. At the close of his testimony, his counsel announced their case closed. After consultation, counsel for plaintiff in *fi. fa.* announced that they would introduce no testimony, but desired to recall the plaintiff for a moment to ask some questions which they had omitted. The court replied "very well;" claimant's counsel said nothing. The witness again took the stand, and was examined by counsel for both parties :

*Held*, that such matters rest in the discretion of the court. Upon his recall, the claimant was still a witness in his own behalf, and plaintiff in *fi. fa.* did not thereby lose the right to open and conclude the argument.

CRAWFORD, J., dissented.

3. A voluntary deed made by a debtor while insolvent is void against his creditors ; or any deed made by a debtor with the intention of delaying, hindering or defrauding creditors, such intention being known to the party taking, is void.

4. Where, in a claim case, the claimant assumed the *onus probandi,*

and the defendant in *fi. fa.* was shown to have been considerably in debt at the time of making a voluntary conveyance on which the claim rested, the burden was upon the claimant to show that the transaction was valid, including ample solvency at the time of the making of the deed.

5. The verdict was supported by the evidence.

Evidence. Claims. Practice in Superior Court. Debtor and Creditor. Deeds. Fraud. Insolvency. Before Judge BROWN. Floyd Superior Court. March Term, 1881.

A *fi. fa.* issued from Floyd Superior Court in favor of Daniel R. Mitchell against Wade S. Cothran, Hugh D. Cothran and James M. Elliott, doing business under the firm name of Cothrans & Elliott, was levied on a lot in the city of Rome as the property of the said Cothrans ; a claim was interposed by Hugh D. Cothran, as trustee for his wife and children. Plaintiff in *fi. fa.* having died, his administrator, Forsyth, was made a party. Claimant's title to the land in dispute was by virtue of a deed of gift made August 11th, 1866, by Hugh D. Cothran to himself as trustee for his wife and children. Plaintiff in *fi. fa.* contended that the deed was void on the ground that claimant was insolvent at the time it was made. Much conflicting evidence was introduced, which it is unnecessary to set out at length. The jury found the property subject. Claimant moved for a new trial upon the following among other grounds :

(1.) When the case was called for trial and after the jury had been stricken, counsel for claimant admitted in writing that H. D. Cothran was in possession of the property levied on after the date of the judgment, and also admitted orally, and so argued to the court, that the debt upon which the plaintiff's judgment was founded was contracted prior to the execution of the trust deed, under which claimant held, and that the *onus* to show the solvency of H. D. Cothran at the time said deed was made was on the claimant.

Thereupon, after argument had, the court held that the claimant's counsel were entitled to open and conclude the case. Claimant's counsel then introduced his deeds and other evidence in the case, concluding his testimony with the examination of H. D. Cothran as a witness for claimant. Plaintiff's counsel cross-examined the said H. D. Cothran and announced that they were through with said cross-examination. Said witness was then called down from the stand by claimant's counsel and the said counsel announced to the court that they had closed for the present, and the court ordered the counsel for plaintiff to proceed with their evidence. The plaintiff's counsel, after a conference among themselves, said to the court: "We will introduce no evidence; we desire to recall Capt. Cothran for a moment to ask him some questions which we have omitted." The court replied, "Very well." Claimant's counsel made no reply, and thereupon said Cothran was requested to take the stand, and he was examined by said counsel in reference to 224 bales of cotton bought in Eufaula in December, 1865, and January, 1866, and all the evidence in relation thereto and succeeding this part of the testimony was brought out, most of which is set out in the motion.

When the evidence had been concluded, claimant's counsel submitted to the court that they were entitled to make the concluding argument in the case, and moved the court to allow them the concluding argument; but the court overruled their motion, and awarded the concluding argument to plaintiff's counsel.

(2.) Because the court, on motion of plaintiff's counsel, ruled out so much of the following evidence as related to the intentions of W. S. Cothran, to-wit: Q "I ask you, in reference to this Eufaula cotton, if your father was not to carry that whole loss, so far as you were concerned?" A. "Do you mean whether he intended to make me pay it?" Q. "Yes, sir." A. "Well, he intended to carry it;

I don't know whether he intended to give it to me; he intended to carry it for me if there had been a loss." Q. "What do you mean by intending to carry it; do you mean that he intended to pay it for you?" A. "Yes, sir."

Plaintiff's cousel objected to his intention, and the court sustained the objection.

Witness stated : "I supposed that he would have been as clever to me as to Capt. Elliott. He gave Capt. Elliott his, as Capt. E. said."

Plaintiff's counsel objected to this also, and the court sustained the objection.

(3) Because the court refused to give the following charge as requested : "If H. D. Cothran was solvent at the time he made the deed to his wife and children, or to himself in trust for them, then the deed is valid ;" but on the contrary charged as follows : "If H. D. Cothran was solvent at the time he made the deed to his wife and children, or to himself as trustee for them—that is to say, if he had ample means outside of the property so conveyed, to pay all the debts he then owed, and the deed was made in good faith, and with no intention to defraud his creditors—then the deed is a valid one."

(4.) Because the court charged the jury as follows : "I have been asked to charge you by plaintiff's counsel that the presumption is, when a man gives away his property when he is in debt, and his creditors are defeated, that he intended to do it, and the burden of proof is upon him to show good faith. If he was shown to be considerably in debt at the time he gave away the property, then the burden is upon him to show that it was a valid and legal transaction ; not only that he was solvent, but that it was not done with any intention to defraud his creditors. He must show that he was amply solvent at the time he made the deed."

(5.) Because the verdict is contrary to law and evidence.

Cothran, trustee, *vs.* Forsyth, administrator.

The court overruled the motion, and the claimant excepted.

DABNEY & FOUCHE; J. BRANHAM, for plaintiff in error.

A. R. WRIGHT; C. N. FEATHERSTON, for defendant.

JACKSON, Chief Justice.

The motion for a new trial in this case is based on three grounds: First, that the claimant was not permitted to conclude the argument; secondly, that the court gave erroneous charges to the jury; and thirdly, that certain evidence was rejected.

1. There was no error in rejecting the evidence. Part of it was objectionable, being the hearsay of another person, not a party, and the rest objectionable because it was the witness' sayso about the intention of his father, without giving any facts to show that intention.

2. There was no error in awarding the conclusion of the argument to the plaintiff in execution. Under the facts, it was in the discretion of the court to permit the plaintiff in execution to interrogate further the claimant who had offered as a witness for himself, and not to consider him when re-interrogated by request the witness of the plaintiff. So far from that discretion having been abused in this case, under the facts here disclosed, it would have been abused if the court had made him the witness of the plaintiff. The facts are that the witness, being the claimant himself, had been examined and cross-examined, and was called down from the stand, and claimant closed for the present. The plaintiff's counsel, after conference among themselves, then said to the court; "We will introduce no evidence, we desire to recall Captain Cothran (the claimant) for a moment to ask him some questions which we have omitted." The court replied, "Very well." Claimant's counsel made no reply, and thereupon the claimant was recalled, and the questions asked without

Cothran, trustee, *vs.* Forsyth, administrator.

objection of any sort by the claimant on the witness stand or his counsel.

These facts make it too plain, it seems to us, for serious question that when the claimant was recalled to be asked omitted questions, by leave of the court and without objection by his own counsel or himself, at the very moment that the plaintiff announced " we will introduce no evidence," that he was recalled as his own witness still. The plaintiff had the right to put him up as his, the plaintiff's, witness without any leave from the court, or acquiescence from the claimant. If he had intended to offer his adversary as his witness, he would not have asked the leave to recall him, nor would he have said at the very time he asked leave to recall him, "we will introduce no evidence." What sort of child's play, what nonsense to say, "we will introduce no evidence," and straightway to introduce it! It is clear, therefore, that plaintiff did not intend claimant when recalled to be his witness. The very language, to recall, indicated to have him again on the stand as he was before he left it. The very leave he asked, the announcement he made when he asked it, all show his, the plaintiff's, intention.

How was it with the claimant? Why did he not object, if he intended to regard the witness as plaintiff's witness, when he knew that his adversary regarded him as his own? Is it fair that he shall sit silent and acquiesce in the leave to recall, and then claim himself to be the witness of the adversary when recalled? Nay, more, shall he go on and participate in the renewed examination of himself, and thus, by acts as well as silence, approve of the leave of the court to the recall, and afterwards claim "I am the witness of the other side and not my own"? Does not fair dealing estop him from setting up such a claim? Will any court tolerate such ambushing? Justice always stands in an open field, and should not permit fighting under cover by any of the combatants in her tournaments. Batteries may play as rapidly and powerfully as brain and

tongue can pour out canister and grape, but they must unmask when Justice watches the contest in order to crown the victor in a fair fight.

Yet, in this case, after all this acquiescence, it is gravely argued that the claimant himself masked himself and ambushed so successfully as to make himself his opponent's witness to cover himself from all attacks upon himself tending to impeach him at all, and to turn his opponent out of his strong position to conclude the argument, a position won at the sacrifice of all his own witnesses, and take that position himself, because the court let his opponent ask him questions omitted when he was up.    It is gravely argued that he thus managed to turn himself into his adversary's witness by this skilful deploying under cover, and that a court that would not allow him to consummate the end of this skilful maneuvre has abused discretion.   We cannot think so.

That all this conduct of a cause in the *nisi prius* court rests in the discretion of the judge, see 14 *Ga.*, 242 ; 19 *Ib.*, 220 ; 20 *Ib.*, 156 ; 45 *Ib.*, 283.   The last case is relied on by plaintiff in error; but the court say there : "It would be improper for this court to interfere with the discretion of the court below in the conduct of a cause on such a point."   Whilst therefore in that case the court agreed with the court below which refused the recall of the witness, it did not disturb the well established doctrine that the matter rested in the discretion of the presiding judge.   There the objection was made to the recall of the witness, and it was not allowed and the court was affirmed in not allowing it done ; but there was in that case no acquiescence by the other side, no announcement that "we will introduce no evidence," no ambuscade, but an open objection and a fair fight.   Had this been that case, the ruling would have been the other way ; and the court would not only not have interfered with the discretion of Judge Brown, but would have approved its exercise.

3. The third ground to be considered is in respect to the charge and refusal to charge. While put in many forms, the objections analyzed amount to but three at farthest. The main one is that the court would not rest the case on insolvency of the donor alone at the time of the gift to wife and children, but also brought under it the other issue, whether the deed of gift was made with intent to defraud, hinder or delay creditors. The court most clearly was right. Such is the Code, section 1952. Such is the principle ruled often by this court. It is enough to cite the Powell and Westmoreland case, 59 *Ga.*, 256; 60 *Ib.*, 572.

4. The next is that the court charged to the effect that if a donor be considerably in debt at the time he makes a deed of gift to his family, then the burden is upon him to show that the transaction is valid—not only that he was then solvent but that then there was no intention to defeat creditors. He must show himself amply solvent when he made the deed of gift. We see no error in the charge. 25 *Ga.*, 684; 17 *Ib.*, 220; 1 Story's Eq., 362, 363; Bump. on Fraud. Con., chap. 11, pp. 286, 294, 295. The words "amply solvent" are thus sustained.

In regard to the *onus*, it is enough to say that when claimant admitted possession in the defendant in *fi. fa.* in his own right, he admitted enough to condemn the property until he showed title in the claimant. He took the burden, and that burden was to show a clean title out of the defendant as an individual into the claimant as trustee.

To make the conveyance to wife and children such clean title, he had to show solvency, and if considerably in debt, ample means to pay what he owed to remove the presumption of intent to defraud or delay creditors— enough means to satisfy the jury that he did not have such intent, in connection with the other circumstances of the case. If his solvency or insolvency were a close question, as in this case, then the task would be more difficult to show a clean deed of gift, and if that

deed were made when he had lost heavily on a venture in cotton, then it would seem almost impossible to convince the most credulous that such intent did not prompt the gift, especially if the donor himself had received it from his father months before, had not had it made then to wife and children, did not then make it himself, but waited until the cotton losses were already heavy.

5. The evidence supports, if it does not require, the verdict, and the presiding judge having approved it, we do not interfere.

Judgment affirmed.

Cited for plaintiff in error: 41 *Ga.*, 196; 58 *Ib.*, 451, 510; 59 *Ib.*, 71; 60 *Ib.*, 572; 61 *Ib.*, 629; 45 *Ib.*, 283; 3 M. and W., 505; 14 *Ib.*, 95; Bump on Fraud. Con., 194; 3 Barb., 110; 17 *Ga.*, 217; 64 *Ib.*, 57, 352, 447, 582, 761, 63 *Ib.*, 22, 85; Code, §1952; 25 *Ga.*, 686; Story Eq., 362; 11 Wheat., 199; 1 Day (Conn.) 525; 53 *Ga.*, 155; 59 *Ib.*, 256; 60 *Ib.*. 572; 56 *Ib.*, 369; Bump on Fraud. Con., 295: 6, 540, 562; 12 Ill., 166; 9 Pet., 220; 18 Wend., 375; 3 Gratt., 26; 37 Me., 397; 34 N Y., 386; 8 Wall., 370; 3 B. & A., 262; 7 Ire., 341; 61 *Ga.*, 373; Bump on Fraud. Con., 388, 327; 28 *Ga.*, 174; Bish. on Law of Mar. Women, 757; 15 Ill., 101; Schouler's Dom. Rel., 282–3, note; 53 Ill., 186; 2 Heisk., 343; 59 *Ga.*, 436; 60 *Ib.*, 119; 61 *Ib.*, 280; Code, §3715; 12 Ill., 166; 24 *Ga.*, 211; Code, 3739, 3758; Burr. on Ass., 340.

For defendant: 14 *Ga.*, 242; 19 *Ib.*, 220; 2ɔ *Ib.*, 156; 25 *Ib.*, 684. 17 *Ib.*, 220; 1 Story Eq., 362, 363; Bump on Fraud. Con. chap. 11, pp. 286, 294–5, 284–5; 59 *Ga.*, 485; 6 *Ib.*, 265.

SPEER, Justice, concurred, but furnished no written opinion.

CRAWFORD, Justice, dissenting.

The real controlling question in this case was fraud or no fraud; the verdict necessarily turned upon it; the

Cothran, trustee, *vs.* Forsyth, administrator.

jury had to decide it; they had to decide it on facts; facts are shown by testimony; the party introducing no testimony was entitled to the concluding argument; before a jury its importance is incalculable; in this case the court gave it to the plaintiff in *fi. fa.* as a right, because he offered, as it is claimed, no evidence.

We all concur in the legal principle involved, but disagree as to the legal effect of what transpired on the trial. The claimant assumed the burden on the opening of the case, offered his testimony and closed; the counsel for plaintiff in *fi. fa.*, upon consultation, announced to the court that they would offer no testimony, but desired to call back to the stand a witness who had testified for a moment, and ask him some questions which had been omitted; no objection was made; he was recalled, examined as to entirely new matter, and the examination pressed, until the evidence swelled into proportions very nearly equal to that which had been given in by the claimant, and undoubtedly controlled the verdict. The court gave the conclusion to the plaintiff in *fi. fa.*

I think this was error. He was entitled to the conclusion upon one condition only, and that was that he introduced no evidence.

The law does not say, nor does it mean, that it depends upon whose witnesses are called to testify; it depends upon whether any evidence is offered; and if it is, whether from newly called or previously sworn witnesses is wholly immaterial. What the witness said was either evidence or nothing; it was held to be evidence, introduced as such, and was offered by the plaintiff after the claimant had closed, and this lost him the right, in my opinion, to the conclusion.

Neither do I think that it was necessary for the claimant to have objected; he had the right to stand on the law, and if any testimony was introduced by the plaintiff in *fi. fa.* he lost the conclusion thereby, and that whether it came from one witness or another. 45 *Ga.*, 283; Rules Superior Court, 13.