POWELL *vs.* WATTS.

1. In a claim case, admissions made by the claimant to the plaintiff in *fi. fa.* concerning matters affecting the title to the property in controversy between them, were admissible; and to prove them the plaintiff was a competent witness, although such testimony involved a former conversation between the plaintiff and defendant, which was communicated to the claimant, and in reply to which it was sought to be shown that he acquiesced or made such answers, or omitted to answer when called upon to do so, as amounted to an admission

2. Whether admissions made by defendant, while in possession of land levied on and claimed, in disparagement of his title, are competent, depends, in some measure, upon the time when they were made. If made before the commencement of the plaintiff's suit, they would be admissible even in favor of the claimant.

(a.) In a claim case, the plaintiff in *fi. fa.* is a competent witness, although the defendant in *fi. fa.* may be dead. The latter has no interest in the issue then on trial.

3. The claimant was a competent witness, although the defendant in *fi. fa.*, under whom he held, was dead.

4. There was no material error, if any at all, in permitting claimant to testify as to his motive in purchasing the property. His disavowal of any improper purpose would be subject to correction, under the evidence going to show the contrary, under proper instructions from the court.

5. Verdicts in cases between a plaintiff in *fi. fa.*, and other parties who acquired title at the same time with the claimant, in which their property was found not subject, were inadmissible on the trial of a claim case.

(a.) As a general rule, where illegal testimony is admitted and afterwards withdrawn, with a caution to the jury not to regard it, the verdict will not be set aside, except in a case where it is probable that the caution was disregarded.

(b.) This differs from *McDonald vs. State* (last term).

April 25, 1884

Evidence. Admissions. Witness. Practice in Superior Court. Before Judge HAMMOND. DeKalb Superior Court. September Term, 1883.

A *fi. fa.* in favor of F. T. Powell against George W. Watts and Edward Watts was levied upon certain land as the property of Edward Watts, and a claim was interposed

by William Watts. The *fi. fa.* was founded on an indebt-
edness created in 1866, and reduced to judgment in 1868.
The claimant was a son of the defendant in *fi. fa.*, and
claimed under a deed from his father, dated in 1867, for
the expressed consideration of $700.00. The principal is-
sue in the case was this : Plaintiff insisted that the defend-
ant in *fi. fa.*, being heavily in debt, had conveyed away all
his lands and property to his children, except a small
amount which he had since sold; that the deed to this
claimant was, in fact, voluntary ; and that this was done
to avoid payment of debts; while claimant contended that
he purchased the land *bona fide* for value.

The jury found the land not subject. Plaintiff moved
for a new trial, on the following among other grounds :

(1.) Because the court, upon objection made by the
claimant that Edward Watts, the defendant in *fi. fa.*, was
dead, refused to allow the plaintiff in *fi. fa.* to testify to
admissions made by Edward Watts while he was in pos-
session of the land conveyed, that he had given his lands
to his children, with all his property of every kind ; that
he had conveyed this property to his children to keep from
paying the debt of one Killis Brown, for whom he was a
security; and that for his debt the said Powell would have
to see his children.

(2.) Because the court, upon objection of the claimant,
refused to allow the plaintiff in *fi. fa.* to testify that he
told claimant that his father, Edward Watts, had said he
had conveyed all his property to his children to keep from
having to pay the Killis Brown debt, and that he had no
property left, and that he must see his children about
his debt ;—the court allowing the plaintiff in *fi. fa.* to tes-
tify as to what the claimant said when he was told what
his father had said to the plaintiff.—The objection to the
evidence was that Edward Watts was dead. [Plaintiff
offered to testify that the defendant in *fi. fa.* made the
statement set out in this ground; that he (plaintiff) com-
municated this to claimant, who responded that his father

did right in conveying his property to avoid the Brown debt. The court admitted the reply of claimant, but rejected the statements made as coming from the defendant.]

(3.) Because the court overruled the objection of plaintiff to the competency of the claimant to testify as to the consideration of the deed made by the defendant in *fi. fa.* to him, the defendant in *fi. fa.* being dead, and allowed the claimant to testify that he paid to the said Edward Watts, for the land conveyed in said deed, the consideration therein recited, in money about two hundred dollars, and the balance in work for him, after becoming of age.

(4.) Because the court overruled the objection of plaintiff, that the intention of the claimant in the acceptance of the deed to the land levied upon, from his father, Edward Watts, was irrelevant, and allowed the claimant, in answer to this question, " Do you know of any scheme on your part to defraud Dr. Powell or William Wright, in your acceptance of this deed ?" to testify as follows : " When I purchased the place, I had no knowledge or thought but that it was a *bona fide* transaction as was ever made between a buyer and a seller. If I had thought anything else, I certainly would not have bought the place and paid for it."

(5.) Because the court overruled the objection of the plaintiff in *fi. fa.*, and allowed the claimant to read in evidence the original claim papers, with the findings of the juries therein, to the effect that the property levied upon was not subject in two cases in DeKalb superior court, where the execution of plaintiff had been levied upon other lands which had been conveyed by Edward Watts to his other children at the same time that the deed to the land in controversy was made to claimant. These claims, with the findings of the juries, remained before the jury for twenty-four hours, and were commented upon by counsel for the claimant in argument to the jury, and were withdrawn by the court just before the conclusion of the argument of counsel for the claimant to the

jury, and the court in his charge instructed the jury that the claim records had been withdrawn from them, and were not to be considered by them in arriving at the conclusion they might come to.

(6.) Because the verdict was contrary to law and evidence.

The motion was overruled, and plaintiff excepted.

CANDLER, THOMSON & CANDLER, for plaintiff in error.

W. L. CALHOUN, for defendant.

HALL, Justice.

1. The plaintiff in *fi. fa.* proposed to prove a conversation with the defendant which he communicated shortly after it took place to the claimant. It appeared that the defendant was dead at the trial, and on that ground the court, on direction, excluded the conversation between the plaintiff and defendant, and allowed only what was said by the claimant in reply thereto to go to the jury. There could have been no objection to the competency of admissions made by the claimant to the plaintiff of matters affecting the title to the property in controversy between them; the plaintiff was clearly entitled to it, as well as to all the conversation therewith connected. Code, §3791. This is a familiar and indisputable principle. "The plaintiff was entitled to have the whole of the conversation that took place between the parties at the time given in evidence, so that the jury might judge of its weight and effect," says Warner, C. J., in 47 *Ga.*, 147; *Ib.*, 642, 647. Had the conversation between plaintiff and defendant been reported to claimant, and had he acquiesced therein or remained silent when the circumstances required an answer or denial, this of itself might have amounted to an admission. Code, §3790. Whether this conversation was admissible, had it not been communicated to the claimant, is immaterial to the question under consideration, and so far as it

concerns that, it need not be decided.    It seems that it was repeated to him shortly after it was held, and that the plaintiff was referred to him and other children of the defendant, to whom he had conveyed nearly all of his property, to make provision for the payment of his claim.    It may be possible, and indeed is highly probable, that the conversation and its communication were but parts of an entire transaction, which went to make up the *res gestæ.* 51 *Ga.*, 534.

2. Whether admissions made by the defendant, while in possession of the land claimed, in disparagement of his title, are competent, would, in some measure, depend upon the time at which they were made.· If made, as it seems probable they were in this instance, before the commencement of plaintiff's suit, then there would, we think, be little doubt of their admissibility (8 *Gx.*, 66, citing *Geo. Dec.*, part 1, p. 44; 20 *Ga.*, 210, 240; 28 *Id.*, 170), even in favor of the claimant; but it admits of some more question, whether, in a contest between him and the claimant, where the rights of no third party had intervened, the latter could be affected by his declarations, made possibly after he had parted with the title.    Code, §3774, and citations.    This, however, though insisted upon, is not the point, where the rights of a creditor are involved; the defendant is in possession contrary to the terms of the conveyance; he attempts to disclaim a title which he had when this debt was created, and the only question between the creditor and the claimant under his debtor is, whether the former has parted with, and the latter has *bona fide* acquired, title to the property on which this credit was given.    The possession, coupled with declarations made under the circumstances, afford some evidence of the character of this transaction between father and son.          .

Conceding the competency of the testimony, however, it is insisted that, inasmuch as the party making the declarations was dead, the plaintiff could not testify as to

them. It is not disputed, where one of the original parties to the contract or cause of action in issue or· on trial is dead, or where an executor or an administrator is a party in any suit on a contract of his testator or intestate, that the other party cannot testify. Code, §3854, par. 1. But it is contended that no contract or cause of action, to which. the defendant in execution was one of the original parties with the plaintiff, is in issue or on trial here, at least none. to which his executor or administrator could be made a party in his stead; that this is an issue between the plaintiff and the claimant alone, in which the defendant in *fi. fa.* has none but a collateral and remote interest, if any ; and that by the terms of the Code, as cited above, the plaintiff is not excluded from testifying. The case of *Anderson vs. Wilson*, 45 *Ga.*, 25, is directly in point, and fully sustains the plaintiff's position.

3. There was no error in admitting the claimant to testify, as we expressly held in two cases, *Scott vs. Mathis* and *White et al. vs. White*, decided at the last term of the court.

4. Neither was there material error, if any at all, in permitting claimant to testify as to his motive in purchasing the property. *Brown vs. Spivey*, 53 *Ga.*, 156, 158. His disavowal of any improper purpose would be subject to correction under the evidence in the case going to show to the contrary, under proper instructions from the court, which were doubtless given, as no complaint is made in reference thereto.

5. That the admission of verdicts in cases between plaintiff and other parties acquiring title to portions of defendant's property at the same time claimant got his conveyances, finding the property in those cases not subject, was an error, the court admitted, and endeavored, as far as he could do so, to repair any injury done the plaintiff thereby. Whether he succeeded in removing any impression prejudicial to the plaintiff may well be questioned ; but as the case necessarily goes back for another hearing, and as this

wrong, whatever it may amount to, will not be repeated, we deem any further notice of the point unnecessary. As a general rule, where illegal testimony is admitted, and afterwards withdrawn with a caution to the jury not to regard it, the verdict will not be set aside, except in a case where it is probable that the caution was disregarded. This is the extent to which a majority of this court went, in *McDonald vs. The State,* at the last term of the court.

We express no opinion as to the testimony in the case for obvious reasons, and order another trial in accordance with the principles here laid down.

Judgment reversed.